MARK E. PICTON *v.* ALISON G. PICTON
(AC 28688)

Flynn, C. J., and DiPentima and Beach, Js.

Argued September 5—officially released October 2, 2008[1]

---

[1] October 2, 2008, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*William C. Franklin*, for the appellant (plaintiff).

*Judith Dixon*, with whom, on the brief, was *Lori Welch-Rubin*, for the appellee (defendant).

*Opinion*

FLYNN, C. J. In this marital dissolution action, the plaintiff, Mark E. Picton, appeals from the judgment of the trial court with respect to the court's financial orders. Specifically, the plaintiff claims that the court abused its discretion by ordering (1) a division of property that was unreasonable, inequitable and inconsistent with the court's factual findings, (2) the plaintiff to pay to the defendant, Alison G. Picton, an unreasonable amount of interest from the date of judgment until the plaintiff is able to sell certain property and (3) the plaintiff to pay to the defendant alimony in the amount of $20,800 each year for a period of seven years.[2] Concluding that statutory interest may not begin to accrue until payment is due in accordance with the court's judgment, we reverse in part and affirm in part the judgment of the trial court.

On March 21, 2007, the court issued its memorandum of decision, in which it made the following relevant findings: "The parties were married on June 1, 1985, in Washington, Connecticut. . . . The parties have two children [born of the marriage] . . . .[3] The parties agree

---

[2] Although the plaintiff has expressed his dissatisfaction with the court's division of assets in this case, where the parties leave such a determination to the court, it likely is a rarity that both sides would be satisfied with the outcome. The record indicates that the court, recognizing that the parties might want further time to make their own agreement, offered them that additional time.

[3] The parties' son was born on March 21, 1987, and at the time of the dissolution was a sophomore at Bates College. Their daughter was born on April 13, 1990, and was a junior at Taft School.

that the marriage has broken down irretrievably. The breakdown resulted from the very different personalities and expectations of the parties and the plaintiff's inability or unwillingness to satisfy the emotional needs of the defendant. As time went on, they realized that they were leading separate lives, were no longer in love and no longer wanted to be married. . . .

"The plaintiff . . . is [fifty-three] years of age and in good health. He holds a bachelor's degree and has had a productive career in building, land investing and development. The plaintiff's income has been extremely variable, year to year. In good years he has earned in excess of $300,000; in bad years, as low as $20,000. His testimony about the reasons for this variation was credible. His financial affidavit reflects that his average net weekly income is $1485.85, a figure which [the court found] to be true.

"The defendant . . . is [fifty] years of age and in good health. She has a bachelor's degree and a master's degree in historic preservation. She was the primary parent at home during the raising of the children and has worked outside the home at part-time jobs. She presently holds two part-time jobs with a total net weekly income of $410.53.

"The parties jointly own a home in Washington, which they purchased in 1986 and used as the marital residence. They renovated the entire house over the years and paid off the mortgage. They agree that the home is now worth $560,000.

"The plaintiff owns a [twenty-six] acre parcel of land in the Merryall section of New Milford, which he purchased as an investment during the marriage. This property is under contract to be sold for $320,000, from which the plaintiff will net $250,000 after payment of closing costs and income taxes.

"The plaintiff owns a vacation home in Orleans, Massachusetts, which he purchased in 1994. Over the next several years, he constructed a substantial addition and made major renovations. The property is in a desirable location and is rented in the summer months. There is no mortgage on the property. Having considered the conflicting evidence, I conclude that the property is worth $1,600,000.

"The plaintiff is a 50 [percent] owner of a building company known as Picton Brothers, LLC. The net value of the plaintiff's interest is $34,704. The plaintiff is a 50 [percent] owner of a real estate investment company known as Ten Titus, LLC. The net value of the plaintiff's interest is $643,761.

"The parties have liquid assets as follows. The plaintiff has an individual retirement account (IRA) worth $73,844, a Fidelity investment account worth $99,842, a certificate of deposit (CD) at NewMil Bank worth $111,050, and checking and money market accounts worth approximately $6000. The defendant has a Fidelity money market account worth $56,475, an IRA worth $47,000, a one-half interest in a CD worth $22,070 and a checking account with an undetermined variable balance.

"In all, the parties have assets valued at approximately $3,500,000 with no debt. The parties take disparate positions regarding the division of these assets. The plaintiff proposes that he receive roughly 70 [percent] of the assets and the defendant roughly 30 [percent]. The defendant proposes that each party receive 50 [percent]."

On the basis of those findings and others, the court issued the following relevant financial orders: "The plaintiff shall pay to the defendant the sum of $400 per week as alimony. This award shall terminate upon the death of either party, the defendant's remarriage or the

passage of seven years, whichever occurs first. This award is nonmodifiable as to term only. . . .

"The real property shall be distributed as follows: (a) The plaintiff shall transfer to the defendant all of his right, title and interest in the marital home. Thereafter, the defendant shall pay for all costs associated with the home and shall indemnify and hold the plaintiff harmless therefrom. The plaintiff shall vacate the premises within [thirty] days from this judgment. (b) The plaintiff shall sell the Merryall lot in New Milford and shall pay the defendant the sum of $200,000 from the net proceeds (the gross proceeds less the cost of sale and capital gains taxes due the federal and state governments). The court retains jurisdiction [over] this sale and payment. (c) The plaintiff may retain the house in Orleans, Massachusetts, provided that he pays to the [defendant] the sum of $700,000 within [ninety] days from the date of this judgment. If this payment is not made within that time, the plaintiff shall immediately list the property for sale at the listing price of $1,600,000 and shall accept any offer of purchase at that figure. From the net proceeds of that sale (the gross proceeds less the cost of sale and capital gains taxes due the federal and state governments), the plaintiff shall pay to the defendant the sum of $700,000 plus interest from the date of judgment at the statutory rate for judgments.[4] The court retains jurisdiction [over] this sale and payment. . . .

"The plaintiff shall retain his interest in Picton Brothers, LLC, and Ten Titus, LLC, free and clear of any claim of the defendant. . . .

"The parties shall each retain their own motor vehicles, bank accounts, stocks, bonds, IRAs, CDs, investment accounts, and money market accounts free and clear of the claims of the other. . . .

---

[4] General Statutes § 37-3a (a) provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in

"The parties shall divide all of their personal property in Washington and Orleans equally. Should they be unable to reach an accord, they shall agree to an arbitrator who will conduct a binding arbitration in which the parties shall participate, with the decision of the arbitrator being final. The court shall retain jurisdiction for the purpose of compelling the arbitration and the enforcement of any arbitration award. . . .

"The plaintiff shall, in accordance with this court's order of November 7, 2005, continue to pay through the date of judgment those expenses he was specifically ordered to pay at that time. The court shall retain jurisdiction to enforce this order." This appeal followed.[5]

On appeal, the plaintiff claims that the court abused its discretion by ordering a division of property that was unreasonable, inequitable and inconsistent with the court's factual findings, especially as to the Orleans property (hereinafter the Cape Cod property). He also claims that the court's order requiring him to pay interest to the defendant from the date of judgment, at a rate of $70,000 per annum, until he is able to sell the Cape Cod property for $1,600,000 also is an abuse of discretion. Finally, the plaintiff claims that the court abused its discretion in ordering him to pay alimony for a period of seven years when the court's findings regarding the defendant's income were clearly erroneous.

"[T]he issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic,

civil actions . . . as damages for the detention of money after it becomes payable. . . ."

[5] The plaintiff also requested that the court articulate several matters. The court denied the requested articulation, and, upon granting in part the plaintiff's motion for review, we directed the court to articulate "whether it considered the $11,000 given each year by the defendant's mother to the defendant to be income for purposes of the entry of financial orders in this case." This issue will be discussed more fully in part III.

each element of which may be dependent on the other. . . . Furthermore, trial courts are endowed with broad discretion to distribute property in connection with a dissolution of marriage." (Citation omitted; internal quotation marks omitted.) *Greco* v. *Greco*, 275 Conn. 348, 354, 880 A.2d 872 (2005). "Generally, [a reviewing court] will not overturn a trial court's division of marital property unless [the trial court] misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it [had a] duty to regard. . . . [A reviewing court] must, however, consider the paramount purpose of a property division pursuant to a dissolution proceeding [which] is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution." (Citations omitted; internal quotation marks omitted.) Id., 355. With these caveats in mind, we will address each of the plaintiff's claims in turn.

I

The plaintiff first claims that the court improperly ordered a division of property that was unreasonable, inequitable and inconsistent with the court's factual findings, especially as the division relates to the Cape Cod property. He argues that it is "undisputed that [he] brought to the marriage the assets which, when sold during the marriage and segregated in [his] accounts, resulted in the acquisition and renovation of the Cape Cod property, which remained solely in the name of the plaintiff thereafter." He also argues that he "was not only solely responsible for the acquisition and appreciation in value of the Cape Cod property, but [that he] did so entirely as a result of the sale of assets he brought to the marriage, and to which the defendant made no contribution." Accordingly, he argues, for the court "[t]o order that well in excess of one-half of the equity on that asset procured by the plaintiff be given to the defendant was, under the circumstances, an

abuse of discretion" and in contravention of General Statutes § 46b-81. We disagree.

First of all, we take the opportunity to point out that the court did not mandate that the plaintiff sell the Cape Cod property. Rather, the court ordered the plaintiff to pay to the defendant $700,000 within ninety days. The defendant's ownership of the Cape Cod property would be unaffected by this order if the plaintiff paid the defendant in accordance with the court's order. If, however, he was unable to make such payment, the court's order required that he sell the Cape Cod property and pay interest on the amount due to the defendant from the date of judgment until such time as he was able to sell the property.

General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect. . . .

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

The plaintiff focuses on § 46b-81 (c) and its requirement that the court consider the contribution of the parties to the acquisition, preservation or appreciation in value of the Cape Cod property and argues that the court abused its discretion by failing to take proper consideration of these factors. These factors, however, are only a few of the many factors specifically mentioned in § 46b-81 (c). In this case, the court unequivocally stated that it gave careful consideration to the statutory factors. Our own independent review of the record reveals nothing that would dispute the accuracy of this statement. We observe that a "judge is presumed to have performed [his] duty unless the contrary appears [from the record]." (Internal quotation marks omitted.) *Miller* v. *Miller*, 22 Conn. App. 310, 314, 577 A.2d 297 (1990).

Here, the court clearly found that the plaintiff was the record owner of the Cape Cod property and that he had been responsible for the major renovations and upgrades made to the home. Although the plaintiff argues that the court did not give sufficient weight to those facts, the weight to be given one fact or factor over another is within the court's discretion. "Although it is not improper for the trial court to consider the actual source or ownership of an asset, these are but two factors to be considered in reaching an equitable division in dissolution proceedings. The fact that a particular asset belongs to one spouse may cause the trial court to be predisposed to awarding it to its named owner; however, if the marital estate is otherwise insufficient to maintain the other spouse, the court must be able to exercise its discretion in arriving at an equitable distribution, taking into consideration the needs and assets of both parties. . . . Unlike provisions in effect in many other jurisdictions that limit distributions to property based upon how and when it was acquired,

§ 46b-81 does not draw such distinctions." *Lopiano* v. *Lopiano*, 247 Conn. 356, 370–71, 752 A.2d 1000 (1998).

The plaintiff purchased the Cape Cod property in 1994, nine years into his marriage with the defendant, at a cost of $230,000. Over approximately a three year period, the plaintiff renovated and upgraded the property, spending virtually every weekend at this property. All of the renovations and upgrades were done during the marriage, while the parties had two small children at home in need of care. The plaintiff admitted that the defendant remained at their primary residence, caring for the children, while he spent weekends upgrading this property over a three year period.[6] Certainly the court would not be abusing its discretion in considering the defendant's substantial nonmonetary contributions that enabled the plaintiff to spend weekends away from his primary residence and his children so that he could upgrade the Cape Cod property. In *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988), we explained that "an equitable distribution of property should take into consideration [each spouse's] contributions to the marriage, including homemaking activities and primary caretaking responsibilities"; id., 311; and that "a determination of each spouse's contribution within the meaning of . . . § 46b-81 includes nonmonetary as well as monetary contributions." (Internal quotation marks omitted.) Id., 312. With these considerations in mind, we cannot agree with the plaintiff's argument that the defendant made no contribution to the preservation of or appreciation in value of the Cape Cod property. Furthermore,

---

[6] Specifically, the plaintiff testified that over a three year period, he "went up there on weekends and extended weekends and worked as many hours in the day as [he] could . . . . [He] was heav[ily] personally involved in the construction of that house and over many, many, weekends [that] otherwise [would have been] vacations times for me or family times." He also testified that the defendant "was usually home" with the children during this time.

the preservation and appreciation in the value of property are only two of the many factors that the court was required to consider pursuant to § 46b-81 (c) before distributing the assets of the parties. On the basis of the record before us, we are unable to conclude that the court failed to give proper consideration to the statutory factors or that it acted in abuse of its discretion when ordering the property distribution.

II

The plaintiff next claims that the court abused its discretion in ordering him to pay statutory interest to the defendant from the date of judgment until he is able to sell the Cape Cod property for $1,600,000. He argues that "[t]he current real estate market is in freefall [and] [e]ven if the Cape Cod property was worth $1,600,000 in March of 2007 . . . it may not be worth nearly that sum at this point in time.[7] . . . Given the foregoing, it may take years to sell the Cape Cod property at a fair price. During that time frame, although the plaintiff has no control over the market, no control over the sales price and no control over individuals who might make offers to purchase the property, the plaintiff is incurring a penalty of $70,000 per year against the equity [in the property]." The defendant argues that the court

---

[7] We note that "[i]n the absence of any exceptional intervening circumstances, the date a dissolution of marriage is granted is the proper time to determine the value of the parties' estate upon which to base division. An increase in the value of property following the date of dissolution does not constitute an exceptional circumstance. . . . Logically, there is no reason why the same date should not be used when there has been a decrease in the value of property. The usual rule in the interpretation of dissolution judgments, when no separation agreement exists, is that financial awards are based on the parties' current (date of the judgment) financial circumstances." (Citation omitted.) *Kremenitzer* v. *Kremenitzer*, 81 Conn. App. 135, 139–40, 838 A.2d 1026 (2004). Although the plaintiff argues that the value of the property has decreased due to market conditions, the court properly valued the property as of the date of the dissolution, and, as a reviewing court, we are unable to look at happenings subsequent to that judgment date.

awarded her $700,000 as her equitable portion of the Cape Cod property and that it did not order the plaintiff to sell the property unless he failed to pay the defendant $700,000 within ninety days. She further argues that it was not an abuse of discretion for the court to order the payment of statutory interest if the plaintiff took more than ninety days to pay the $700,000 that she was awarded. We conclude that the court did not abuse its discretion in ordering interest but that it improperly ordered that the interest was to accrue from the date of judgment.

"The trial court has the discretion to decide whether to make an award of interest under General Statutes § 37-3a [which] . . . provides for interest on money detained after it becomes due and payable." (Citations omitted.) *Crowley* v. *Crowley*, 46 Conn. App. 87, 96–97, 699 A.2d 1029 (1997). "It is well established that we will not overrule a trial court's determination regarding an award of interest absent a clear abuse of discretion." (Internal quotation marks omitted.) *Dowd* v. *Dowd*, 96 Conn. App. 75, 85, 899 A.2d 76, cert. denied, 280 Conn. 907, 907 A.2d 89 (2006). "The determination of whether . . . interest is to be recognized as a proper element of [recovery] is one to be made in view of the demands of justice rather than through the application of any arbitrary rule." (Internal quotation marks omitted.) Id. "[T]here is no statutory prohibition against awarding interest on a judgment in domestic relations cases . . . because the courts may fashion remedies that are appropriate and equitable . . . ." *LaBow* v. *LaBow*, 13 Conn. App. 330, 353, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). "The question of whether . . . interest is a proper element of recovery ordinarily rests upon whether the detention of money is or is not wrongful." Id., 352. "When a former spouse is not justified in failing to pay sums due . . . the award

of interest is proper." (Internal quotation marks omitted.) *Dowd* v. *Dowd*, supra, 86.

Although the plaintiff focuses on the possibility that he will be unable to sell the Cape Cod property in today's market, the court's order required him to pay to the defendant the sum of $700,000 within ninety days, and only if he failed to pay this sum would he be required to put the Cape Cod property on the market and to pay interest to the defendant. Additionally, although he argues that he lacks "sufficient income to borrow and repay the $700,000 even if he were willing to mortgage the Cape Cod property to do so," in this case, the court found that the parties had assets valued at $3.5 million, approximately. It also found that the parties had no debts and that they had liquid assets. The plaintiff's interest in Picton Brothers, LLC, was valued at $34,704, and his interest in Ten Titus, LLC, was valued at $643,761. The court awarded no interest in these companies to the defendant. The plaintiff was the sole owner of the Cape Cod property, which the plaintiff valued at $1.5 million on his financial affidavit and which the court valued at $1.6 million after considering all of the evidence, including the appraiser's report valuing it at $1.7 million, free of any mortgages.

On the basis of the record before us, we are unable to conclude that the court abused its discretion in ordering the plaintiff to pay statutory interest on the outstanding amount due to the defendant if the plaintiff failed to pay the defendant the amount due within ninety days. The court did abuse its discretion, however, in ordering that interest was to accumulate from the date of judgment. As this court explained in *Sosin* v. *Sosin*, 109 Conn. App. 691, 952 A.2d 1258, cert. granted, 289 Conn. 934, 935, 958 A.2d 1245 (2008), § 37-3a "permits interest to accrue on money awarded in a civil action [only] *after* it has become payable by virtue of the court's judgment." (Emphasis added.) Id., 709. In this case, the plaintiff had ninety days to make payment to the

defendant. Accordingly, interest should not have begun to accrue until that time had lapsed and the plaintiff had failed to make payment in accordance with the court's judgment.

## III

The plaintiff also claims that the court "abused its discretion relative to its alimony award on the basis that neither the factual predicate for the alimony award was supported by the evidence at trial, nor could the trial court reasonably conclude as it did relative to its alimony award." Specifically, he argues that the court's finding regarding the defendant's net income was clearly erroneous because the court failed to include the $11,000 in income that the defendant receives from her mother on an annual basis. The defendant argues that the court did consider this income when fashioning the alimony order and that this fact was made clear by the court in its memorandum of decision and in its articulation. We agree with the defendant.

"In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in General Statutes § 46b-81 (division of marital property), [General Statutes] § 46b-82 (alimony) and [General Statutes] § 46b-84 (child support). All three statutory provisions require consideration of the parties' amount and sources of income in determining the appropriate division of property and size of any child support or alimony award." (Internal quotation marks omitted.) *Bartel* v. *Bartel*, 98 Conn. App. 706, 711, 911 A.2d 1134 (2006). Relevant to the present claim concerning alimony, § 46b-82 (a) provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage or legal separation, the age,

health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

"Our Supreme Court has emphasized the importance of using an expansive definition of income when formulating financial orders during the course of marriage dissolution proceedings. . . . Adopting a flexible definition of income, the court has explained, ensures that each spouse fulfills his or her continuing duty to support one another and each receives his or her equitable share of the marital assets. . . . In keeping with this notion, the court has upheld an alimony award that counted as net income regularly and consistently received gifts, whether in the form of contributions to expenses or otherwise . . . to the extent that they increase the amount of income available for support purposes." (Citations omitted; internal quotation marks omitted.) *Bartel* v. *Bartel*, supra, 98 Conn. App. 712.

In its memorandum of decision, the court found that the plaintiff's income had varied from year to year, the plaintiff having earned more than $300,000 in some years and as little as $20,000 in other years. The court accepted as true the plaintiff's affidavit stating that he had an average net income of $1485.85 per week. As to the defendant, the court found that she held "two part-time jobs with a total net weekly income of $410.53." In addition to these findings regarding employment income, the court also found that the defendant's mother "gave the defendant $10,000 or $11,000 each year . . . [and that] [t]here was evidence that the defendant's mother intend[ed] to continue to give . . . $11,000 per year to the defendant." Following these and

other findings, the court fashioned the financial orders in this case, including ordering the plaintiff to "pay to the defendant the sum of $400 per week as alimony." It also ordered that the alimony would "terminate upon the death of either party, the defendant's remarriage or the passage of seven years, whichever occur[red] first." This alimony award was "nonmodifiable as to term only."

The plaintiff filed a motion for articulation, asking, among other things, that the court articulate whether it considered the $11,000 gifts from the defendant's mother to be income for purposes of the financial orders. After the court denied the plaintiff's motion, the plaintiff filed a motion for review with this court. Upon granting in part the plaintiff's motion for review, this court directed the trial court to articulate "whether it considered the $11,000 given each year by the defendant's mother to the defendant to be income for purposes of the entry of financial orders in this case." The trial court responded: "I considered the $11,000 given each year by the defendant's mother to be a regularly recurring gift, which would continue in the future as income to the defendant."

On the basis of the court's memorandum of decision and its articulation in this case, it is clear that the court did consider as income to the defendant the $11,000 yearly gift from her mother when it fashioned the alimony award. Accordingly, the plaintiff's claim that the court failed to consider these gifts as income to the defendant is without merit.

The judgment is reversed only as to the date on which interest began to accrue and the case is remanded with direction to render judgment ordering interest pursuant to General Statutes § 37-3a from ninety days after the date of judgment. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.