******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEPHEN J. BRUNO *v.* LISA BRUNO
(AC 37473)

Alvord, Mullins and Beach, J.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from certain postjudgment orders of the trial court. On appeal, the defendant claimed, inter alia, that the trial court, in vacating prior awards of postjudgment interest, exceeded the specific direction of a remand order from this court, which had directed the trial court to vacate a judgment granting the plaintiff's motion to modify his alimony obligation and valuing a certain bank account as of the date on which the defendant withdrew her prior appeals, rather than the date of the dissolution. *Held*:

1. The trial court properly vacated awards of postjudgment interest that previously had been awarded in connection with an alimony arrearage and the bank account in dispute between the parties, and did not exceed the specific direction of this court's mandate on remand: in vacating the judgment granting the plaintiff's motion to modify his alimony obligation in accordance with this court's remand order, the court also vacated an associated award of postjudgment interest, which had been calculated by reference to the plaintiff's modified alimony obligation and, thus, was inextricably intertwined with the court's earlier decision to grant the plaintiff's motion for modification; moreover, the trial court, which vacated the judgment valuing the bank account, properly determined that it also had to vacate an award of postjudgment interest that had been based on that bank account, which was inextricably intertwined with the court's earlier, erroneous decision to value the account on the basis of an incorrect date, and by vacating the awards of postjudgment interest, the court properly put the parties in the same condition as they were in before the court rendered judgment granting the motion to modify and valuing the bank account.

2. The trial court did not abuse its discretion in awarding the defendant interest with regard to an alimony arrearage and the bank account in dispute between the parties: in awarding the defendant postjudgment interest on the bank account, the court explicitly considered the surrounding circumstances of the case, including the plaintiff's history of nonpayment and the court's repeated efforts to determine the value of the bank account, and it properly determined that the detention of the defendant's money was wrongful, pursuant to statute (§ 37-3a), only after September 30, 2014, the date on which the court had determined the value of the bank account; moreover, in awarding postjudgment interest on the alimony arrearage, the court relied on its prior calculation of the total arrearage that had accrued between February, 2009 and April, 2014, awarding interest on the basis of all of the alimony that the plaintiff had withheld since the judgment of dissolution was rendered, rather than individually on each of the missed weekly payments, and nothing in § 37-3a required the compounding of interest; furthermore, the court did not abuse its discretion in awarding interest at a rate of 4 percent, as the court explicitly considered the facts and circumstances of the underlying case, acknowledging that the plaintiff repeatedly had failed to comply with court orders and had engaged in continuous and persistent contumacious conduct, and that it was awarding the defendant postjudgment interest to compensate her for the loss of the use of money she otherwise would have had available to her from 2009, and the court acted within its discretion to award interest at a rate lower than 10 percent.

3. The trial court properly held the defendant in contempt for violating a court order: the underlying order was sufficiently clear and unambiguous as to support a judgment of contempt, as the court issued a clear oral order instructing the defendant to hold certain proceeds from the sale of certain real property in escrow, and the defendant failed to place any proceeds in escrow following the sale of the property, and there was no merit to the defendant's claim that her actions were not wilful

because she had no reason to believe that the court's instructions were not codified in its written order, as the defendant was present when the trial court explicitly stated that it was not granting the defendant's proposed order as it was written, which did not include instructions to hold sale proceeds in escrow, and that there were additional oral orders it made restricting the procedure upon a sale.

Argued April 12—officially released October 31, 2017

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Danbury and tried to the court, *Hon. Sidney Axelrod*, judge trial referee; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Winslow, J.*, granted the plaintiff's motion to modify alimony, and the plaintiff appealed and the defendant cross appealed to this court, which dismissed the plaintiff's appeal, reversed the judgment in part, and remanded the case with direction to deny the motion to modify alimony; subsequently, the court, *Winslow, J.*, entered orders as to the valuation of a certain asset, and the defendant appealed to this court, which reversed the judgment as to the valuation of that asset and remanded the case for further proceedings; thereafter, the court, *Winslow, J.*, granted the defendant's motion for contempt; subsequently, the court, *Winslow, J.*, granted the defendant's motion for order regarding real estate and issued other certain orders; thereafter, the court, *Shaban, J.*, denied the plaintiff's motion to modify alimony and issued certain orders regarding alimony and a certain asset; subsequently, the court, *Winslow, J.*, granted the plaintiff's motion for clarification regarding the real estate order and issued certain orders; thereafter, the court, *Shaban, J.*, denied the defendant's motion to reargue the alimony orders, and the plaintiff appealed and the defendant cross appealed to this court, which dismissed the plaintiff's appeal; subsequently, the court, *Shaban, J.*, granted the plaintiff's motion for contempt, and the defendant filed an amended cross appeal; thereafter, the court, *Shaban, J.*, granted the defendant's motions for an award of interest; subsequently, the court, *Shaban, J.*, granted the defendant's motions to reargue but denied the relief requested therein, and the defendant filed an amended cross appeal. *Affirmed.*

*Lisa Bruno*, self-represented, the appellant (defendant).

*Opinion*

BEACH, J. This appeal arises out of several postjudgment orders following the judgment of the trial court dissolving the parties' marriage. On appeal, the defendant, Lisa Bruno, claims that the court erred in (1) vacating prior awards of postjudgment interest on remand from this court, (2) employing an incorrect time frame and improper rate in calculating subsequent awards of postjudgment interest, and (3) finding her in contempt for failure to follow a court order. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. On March 17, 2008, the court rendered a judgment dissolving the defendant's twenty-one year marriage to the plaintiff, Stephen Bruno. The court ordered, among other things, that the plaintiff pay the defendant $4000 per week in alimony, distribute to the defendant certain assets in a Charles Schwab bank account (Schwab account), and cooperate in the sale of marital property located at 111 Spring Valley Road in Ridgefield. The defendant appealed from the judgment of dissolution, but ultimately withdrew her appeal on August 31, 2009.

Approximately four months after the judgment of dissolution was rendered, the plaintiff moved to modify his alimony obligation, alleging that his earning capacity had been reduced. On February 26, 2009, the court granted the motion and reduced the plaintiff's alimony obligation. The plaintiff appealed from the judgment, and the defendant cross appealed.[1] This court dismissed the plaintiff's appeal on the basis of his "continuous contemptuous conduct." *Bruno* v. *Bruno*, 132 Conn. App. 341 n.1, 31 A.3d 860 (2011). In considering the defendant's cross appeal, this court concluded that there had been "no distinct and definite change in the plaintiff's circumstances that would warrant modification of his alimony obligations," and ordered that "the judgment is reversed only as to the granting of the plaintiff's motion to modify alimony and the case is remanded with direction to deny the motion . . . ." Id., 346, 357.

Prior to this court's decision on the alimony modification appeal, the defendant also filed a motion for contempt for the plaintiff's failure to distribute to her any portion of the Charles Schwab account. The trial court granted the defendant's motion on June 7, 2010. Approximately one month later, in connection with the granting of the defendant's motion for contempt, the court, *Winslow, J.*, conducted a hearing to determine the specific amount owed to the defendant pursuant to the division of the Schwab account. In calculating the amount owed, the court determined the value of the account as of August 31, 2009, the date on which the defendant withdrew her appeal from the judgment of dissolution, rather than March 17, 2008, the date on

which the judgment of dissolution was rendered. The court also awarded the defendant postjudgment interest on the Schwab account based on the account's value as of August 31, 2009.

The defendant appealed from the court's order, arguing that the account should have been valued as of the date that the judgment of dissolution was rendered. This court reversed the judgment of the trial court. We noted that the trial court "improperly ordered that assets in the Schwab account be divided based on the value of the account on the date the stay associated with defendant's appeal from the dissolution judgment was terminated, rather than the value of the account on the date of dissolution," and remanded the case "for further proceedings in accordance with this opinion." *Bruno* v. *Bruno*, supra, 132 Conn. App. 351, 357.

On January 31, 2014, the court, *Shaban, J.*, issued an order notifying the parties that a hearing would be conducted in order to determine "any alimony arrearage" and to address "[t]he division of the Schwab account." The court conducted the hearing on February 24 and April 7, 2014. In a September 30, 2014 memorandum of decision, the trial court, in accordance with this court's instructions, denied the plaintiff's motion for modification of his alimony obligation. The court determined that "the amount found to be in arrears must be vacated in light of the Appellate Court's ruling reversing the modification of alimony. Such an amount must be redetermined by this court." The court also noted that the defendant previously had been awarded interest on the outstanding alimony arrearage, and held that "[t]hat order is also vacated in light of the Appellate Court finding error as to the modification of alimony. This court takes no action on the issue of the award of interest on any alimony order and directs the defendant to reclaim the motion if she wishes to address anew the issue of interest." Similarly, with respect to the Schwab account, the court held that "based on the Appellate Court's finding of error in the valuation of the Schwab account, the prior award of interest is also erroneous and cannot be granted."

On October 16, 2014, the defendant filed a motion to reargue, which the court denied on January 22, 2015. The plaintiff appealed from the court's decision on remand, but his appeal was dismissed. The defendant then filed the present cross appeal from the judgment vacating the awards of interest.

While her cross appeal was pending, the defendant filed motions for interest on the money owed to her pursuant to the alimony arrearage and to the division of the Schwab account. On October 9, 2015, after multiple hearings, the court awarded the defendant postjudgment interest at a rate of 4 percent on both the alimony arrearage and the Schwab account. The court determined that interest was to begin to accrue on the

Schwab account as of September 30, 2014, the date of the trial court's decision following the remand, and on the alimony arrearage as of April 7, 2014, the date of the hearing in which the alimony arrearage had been calculated. The defendant filed motions to reargue. The court granted the motions, but denied the relief requested therein. The defendant subsequently amended the pending cross appeal to include her claim that the court had improperly awarded postjudgment interest.

While the defendant was involved in court proceedings regarding the alimony arrearage and the Schwab account, she filed a motion for order with respect to the marital property at 111 Spring Valley Road, arguing that the plaintiff had failed to comply with the court's order that he cooperate in the sale of the property. The court, *Winslow*, *J.*, held a hearing on the motion on August 6, 2010. After noting orally that any "proceeds above $300,000 are to be held in escrow pending further hearing and—and decision by the court," the court issued a written order in which it "assign[ed] to the defendant, Lisa Bruno, all right, title, and interest of Stephen Bruno in the property located at 111 Spring Valley Road, Ridgefield, [Connecticut]." Additionally, the court noted orally that it was "not really granting the order as written [by the defendant]," and that the written order was "not an order in this case, but a document for the land records" prior to issuing the written order.

The defendant subsequently sold the property for $3,700,000, resulting in net proceeds of $1,902,890.41. She did not place any of the proceeds of the sale in escrow. The plaintiff subsequently filed a motion for contempt. The court granted the plaintiff's motion, and the defendant amended the present cross appeal to include an appeal from the court's finding of contempt. We will address each of the defendant's claims in turn, setting forth additional facts and procedural history as necessary.

I

The defendant first claims that the trial court improperly exceeded the specific direction of this court's mandate when, on remand, it vacated awards of postjudgment interest that previously had been awarded in connection with the alimony arrearage and the Schwab account. We disagree.

We begin by setting forth the relevant standard of review. "Determining the scope of a remand is a matter of law because it requires the trial court to undertake a legal interpretation of the higher court's mandate in light of that court's analysis. . . . Because a mandate defines the trial court's authority to proceed with the case on remand, determining the scope of a remand is akin to determining subject matter jurisdiction. . . .

At the outset, we note that, [i]f a judgment is set aside on appeal, its effect is destroyed and the parties *are in the same condition as before it was rendered. . . .* As a result, [w]ell established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 383–84, 3 A.3d 892 (2010).

As set forth previously, with respect to the alimony arrearage, the trial court properly followed this court's mandate on remand and vacated the judgment granting the plaintiff's motion to modify his alimony obligation. In vacating that judgment, the court noted that it was also vacating the associated award of postjudgment interest. The interest award had been calculated by reference to the plaintiff's modified alimony obligation, and was therefore inextricably intertwined with the court's earlier decision to grant the plaintiff's motion for modification. The court's decision to vacate the award of postjudgment interest on remand was consistent with the notion that, when a judgment is set aside, the "effect is destroyed and the parties are in the same condition as before [the judgment] was rendered." (Internal quotation marks omitted.) Id., 383. By vacating the award, the court properly put the parties in the same condition as before the 2009 judgment granting the plaintiff's motion to modify his alimony obligation was rendered. As such, the trial court properly interpreted this court's mandate with respect to the issue of alimony, and did not exceed the specific direction of this court's mandate on remand.

Similarly, with respect to the Schwab account, the trial court properly followed this court's mandate on remand and vacated the judgment which valued the Schwab account as of the date on which the defendant withdrew her appeals, rather than the date of dissolution. The trial court determined that it must also vacate an award of postjudgment interest that had been based on the value of the Schwab account on the date the defendant withdrew her appeals, and was therefore inextricably intertwined with the court's earlier, erroneous decision to value the account as of that date. By vacating the award of postjudgment interest, the court properly put the parties in the same condition as before the judgment improperly valuing the Schwab account was rendered. As such, the trial court properly interpreted this court's mandate on remand, and did not exceed the specific direction of the mandate.

II

The defendant next argues that the court, in ruling on her reclaimed motions for interest, abused its discretion in awarding interest on the Schwab account and

on the alimony arrearage accruing from September 30, 2014, and April 7, 2014, respectively, and at a rate of 4 percent, rather than a rate of 10 percent. We disagree and affirm the judgment of the trial court.

We begin by setting forth the relevant standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Demartino* v. *Demartino*, 79 Conn. App. 488, 492–93, 830 A.2d 394 (2003).

### A

The defendant argues that the court erred in determining that the awards of postjudgment interest on the Schwab account and on the alimony arrearage were to accrue from September 30, 2014, and April 7, 2014, respectively. We disagree.

The court awarded the defendant interest on both the Schwab account and the alimony arrearage pursuant to Connecticut General Statutes § 37-3a.[2] "[Section] 37–3a permits interest to accrue on money awarded in a civil action [only] after it has become payable by virtue of the court's judgment." (Emphasis omitted; internal quotation marks omitted.) *Picton* v. *Picton*, 111 Conn. App. 143, 156, 958 A.2d 763 (2008), cert. denied, 290 Conn. 905, 962 A.2d 794 (2009). "Because § 37–3a provides that interest 'may be recovered' . . . it is clear that the statute does not require an award of interest in every case in which money has been detained after it has become payable." (Emphasis omitted.) *Sosin* v. *Sosin*, 300 Conn. 205, 228, 14 A.3d 307 (2011). "Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances." (Internal quotation marks omitted.) Id., 229. "[I]n the context of § 37-3a, a wrongful detention of money, that is, a detention of money without the legal right to do so, is established merely by a favorable judgment on the underlying legal claim . . . upon a finding that such an award is fair and equitable. . . . [T]he fact that a defendant has a legal right to withhold payment under the judgment during the pendency of an appeal is irrelevant to the question of whether the plaintiff is entitled to interest under § 37-3a." *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 310

Conn. 38, 48–49, 74 A.3d 1212 (2013).

i

With respect to the interest awarded on the Schwab account, the court, *Shaban, J.*, held that it would be "fair and equitable to award postjudgment interest from September 30, 2014 . . . until the amounts due out of the Schwab account as set forth in [the court's September 30, 2014] decision are paid." The court noted that "the plaintiff has had access to the funds since the date of the dissolution and has made no payments whatsoever," and that "the defendant has been deprived of the use of part or all of the funds due her for over seven years." The court finally noted that the award of interest was intended "to compensate the defendant for the loss of the use of money that she otherwise would have had . . . ."

In determining whether the court "either incorrectly applied the law or could not reasonably conclude as it did"; (internal quotation marks omitted) *Demartino* v. *Demartino*, supra, 79 Conn. App. 493; we note that the trial court has very broad discretion in awarding postjudgment interest. To determine whether the court abused its broad discretion, we must determine whether, in holding that interest on the Schwab account should begin to accrue on September 30, 2014, the court applied the correct standards for exercising its discretion pursuant to § 37-3a.

As mentioned, when the court decided that interest should begin to run from September 30, 2014, the defendant filed a motion to reargue. In response to that motion, the court explained its reasoning as follows: "[T]he value of the Schwab account was not established by court order until September 30, 2014; that order having come about due to an appeal by the parties on the issue of the court's valuation of the account. The Appellate Court found error in the court's original calculation and remanded the matter back to the trial court to establish the value of the account, which it did on September 30, 2014. In *Sosin* v. *Sosin*, [supra, 300 Conn. 245–46 n. 26], our Supreme Court upheld an award of interest from the date of a trial court's order on a party's postjudgment motion. That court specifically noted in footnote 26 that the trial court's award of interest running from the date of its order on the plaintiff's motion to reargue was supported by the record and was proper under General Statutes § 37-3a. Id. It also noted that in considering statutes awarding interest, unlike General Statutes § 37-3b, Section 37-3a contains no similar language requiring that interest be computed from the date of judgment or twenty-one days thereafter." (Footnote omitted; internal quotation marks omitted.)

In *Sosin* v. *Sosin*, supra, 300 Conn. 210, the trial court, on March 22, 2005, dissolved a marriage and issued a memorandum of decision. After the decision was

issued, the plaintiff discovered that the court had "misstated the value of eight pieces of furniture, resulting in an overstatement of their value to the plaintiff of $459,700 . . . awarded a painting to both parties and failed to award another painting to either party . . . [and] stated that the value of one of the seventeen bank or brokerage accounts was $57,650,000 when the parties had agreed that the account had a balance of $54,000,000, resulting in an overstatement of the value to the plaintiff of $3,650,000." Id., 211. The plaintiff filed a motion to reargue, which the trial court granted on September 8, 2005, reducing the award from $24,000,000 to $23,834,900. Id., 212.

The plaintiff subsequently failed to pay the defendant any of that award. Id. On November 10, 2005, after the defendant filed a motion for contempt, the plaintiff paid the defendant $20,006,819, which was $3,828,081 less than the award ordered by the court. Id. In response to the defendant's request for interest on the amount improperly withheld, the court ordered the plaintiff to pay "[i]nterest at the legal rate . . . on said sum from September 8, 2005, the date on which the court had modified its original order in response to the plaintiff's initial motion to argue." (Internal quotation marks omitted.) Id., 213.

In affirming the trial court's award of interest, our Supreme Court held that "[i]n the present case, the trial court determined that the plaintiff's retention of $3,828,081 after the trial court had issued its September 8, 2005 order was wrongful under the circumstances and, therefore, that interest on the amount . . . began to accrue as of September 8, 2005. We must assume that the trial court determined that, until that time, the plaintiff's retention of the money was not entirely unjustified." Id., 247 n.26. In rendering this decision, the court noted that "the trial court has broad discretion under § 37-3a to determine . . . the amount of interest based on the trial court's determination of whether the detention of money, or any portion thereof, was wrongful under all of the circumstances." Id., 246–47 n.26.

In awarding the defendant postjudgment interest in the present case, the court explicitly considered the surrounding circumstances, including the plaintiff's history of nonpayment, and the court's repeated efforts to determine the value of the Schwab account. The court then determined that the detention of the defendant's money was wrongful, for the purposes of § 37-3a, only after September 30, 2014, the date on which the court determined the value of the Schwab account. Although an earlier date may have been within the court's discretion, we cannot say that the court abused its discretion by the use of that date.[3] Because the court appropriately considered all of the circumstances of both the plaintiff's detention of the funds and the nature

of the case in rendering its decision, we conclude that the court did not abuse its broad discretion in awarding the defendant postjudgment interest to begin on September 30, 2014.

ii

With respect to the alimony arrearage, the court awarded the defendant postjudgment interest as follows: "[4] percent on $976,627.70 from April 7, 2014 to December 8, 2014; [4] percent on $1,116,627.70 from December 9, 2014 to August 9, 2015 and [4] percent on [$1,256,627.70] from August 10, 2015 until paid in full." The $976,627.70 sum on which the court ran interest from April 7, 2014, to December 8, 2014, represents the total arrearage that had accrued between February 28, 2009, and April 7, 2014, a sum that had been calculated by the court on April 7, 2014, and established by court order on September 30, 2014. The $1,116,627.70 sum represents the total arrearage that had accrued between February 28, 2009 and December 9, 2014, a sum that had been calculated by the court in response to a motion for order made by the defendant. Finally, the $1,256,627.70 sum represents the total arrearage that had accrued between February 28, 2009 and August 10, 2015, also calculated in response to a motion for order made by the defendant.

The defendant argues that the court abused its discretion in determining that interest should begin to run on April 7, 2014, rather than on February 28, 2009, the date on which the alimony arrearage began. The defendant further argues that the interest awarded by the trial court does not properly compensate her for the loss of the use of her money, because it does not account for compounded interest. We disagree.

As mentioned, the plaintiff had been in alimony arrears since February 28, 2009. In awarding postjudgment interest, the court relied on its prior calculation of the total arrearage that had accrued between February 28, 2009 and April 7, 2014, and awarded four percent interest on that sum. In other words, the court awarded interest on the basis of all of the alimony that the plaintiff had withheld since the judgment of dissolution was rendered, but awarded that interest on the basis of the total arrearage, rather than awarding interest individually on each of the missed weekly payments. The defendant argues that the amount of interest due was not calculated properly, because it does not provide for compound interest. As the court noted in its memorandum of decision in response to her motion to reargue, however, "[t]here is nothing in § 37-3a that calls for compounding of interest." In light of the court's broad discretion in determining the amount of postjudgment interest to be awarded, the court's decision to calculate interest on the basis of the total arrearage, rather than on the basis of each weekly payment over the course of several years, was not an abuse of discretion.

B

The defendant also argues that the court erred in awarding interest at a rate of 4 percent, rather than 10 percent, on her portion of the Schwab account and the alimony arrearage. We conclude that the court acted within its discretion in awarding interest at a rate of 4 percent.

"It is well established that we will not overrule a trial court's determination regarding an award of interest absent a clear abuse of discretion." (Internal quotation marks omitted.) *Picton* v. *Picton*, supra, 111 Conn. App. 155. "[U]nder § 37–3a, the court may award a maximum rate of interest of 10 percent per year, *but it has discretion to apply a lesser rate.*" (Emphasis added.) *Marulli* v. *Wood Frame Construction Co.*, *LLC*, 154 Conn. App. 196, 210, 107 A.3d 442 (2014), cert. denied, 315 Conn. 928, 109 A.3d 923 (2015); see also *Sosin* v. *Sosin*, supra, 300 Conn. 246 n.26 ("this court repeatedly has recognized that the trial court has broad discretion under § 37-3a to determine . . . the rate of interest"). The defendant argues that "the court should have awarded the presumptive rate of 10 [percent] given that the plaintiff waived his right to contest why 10 [percent] should not apply[4] and the facts and circumstances of this case overwhelmingly support the award of 10 [percent]." She specifically argues that an award at the rate of 4 percent "is simply not equitable" because "the judgment is more than eight years old and still has not been effectuated because the plaintiff has simply refused to comply and has stolen the defendant's property."

In awarding interest on the alimony arrearage, the court explicitly considered the facts and circumstances of the underlying case. The court acknowledged that the plaintiff repeatedly had failed to comply with court orders, and that he had engaged in "continuous and persistent contumacious conduct"; (internal quotation marks omitted); following the judgment of dissolution. The court specifically noted that it was awarding the defendant postjudgment interest "to compensate the defendant for the loss of the use of money she otherwise would have had available to her from February 28, 2009 until such time as the arrearage is paid in full." Importantly, the court also cited several cases in which interest had been awarded at a rate lower than 10 percent to reflect the significant fall in interest rates in recent years. In awarding interest on the Schwab account, the court made nearly identical observations. Because the court has the discretion to apply a rate lower than 10 percent, and because the record reflects that the court did consider the relevant facts and circumstances of the underlying case in reaching its decision, we cannot conclude that the court abused its discretion in awarding interest at a rate of 4 percent.

III

The defendant next claims that the court improperly held her in contempt for violating a court order. We disagree.

The following facts are relevant to this claim. As set forth previously, pursuant to the judgment of dissolution, the parties were required to cooperate in the sale of their home and to divide any net proceeds over $300,000 from the sale equally between them. The defendant's attempts to sell the property were frustrated by the plaintiff's failure to cooperate. The defendant filed a motion for order with respect to the property, and the court, *Winslow, J.*, held a hearing on the motion on August 6, 2010. At that hearing, the court stated: "All right. Here's what I'm going to do, at this time, I'm going to transfer, via [General Statutes § 46b-81], the title to the property at 111 Spring Valley Road in Ridgefield solely to the defendant, Lisa Bruno, for the purpose of effectuating the orders of the court . . . to bring about a sale of the property. . . . From any proceeds realized upon the sale of the property, the first $300,000 of any equity, should there be that much, will be apportioned to [the defendant] as an immediate relief for the monies owed to her, generally, through this lawsuit. Any additional proceeds above $300,000 are to be held in escrow pending further hearing and . . . decision by the court, escrowed by the . . . real . . . property attorney, who handles it. My belief and understanding is that the majority of those proceeds would be [the defendant's], but I don't want to make that decision at this point in time . . . ."

The court further noted: "Now, it will be necessary, I believe, once again, for an order to be presented to the court—not an order in this case, but a document for the land records . . . ." The defendant responded: "I typed up an order it's that—without giving any of the other details that Your Honor alluded to, it just talks about the right, title, and interest . . . to be transferred to me . . . and I have a schedule A for the property." The court replied: "Okay. Coming prepared, as usual. Except I'm not really granting the order as written. . . . All right. I have modified this written document, somewhat, by referencing a particular statute, § 46b-81, and limiting this particular order that's going on the land records to the sentence put forward by [the defendant]. As we all know, however, there are additional orders that I've made today, somewhat restricting the procedure upon a sale."

The court then issued a written order in which it stated: "[The] [d]efendant's motion for order, postjudgment, having been reviewed by the court, is hereby granted, as follows: Pursuant to Connecticut General Statutes § 46b-81, the court hereby assigns to the defendant, Lisa Bruno, all right, title, and interest of Stephen Bruno in the property located at 111 Spring Valley Road Ridgefield [Connecticut]."

The defendant sold the property in April, 2011, and failed to place any proceeds in escrow. On November 1, 2013, the plaintiff filed a motion for contempt. While his motion for contempt was pending, the plaintiff filed a motion for clarification of the court's August 6, 2010 order, arguing that "[t]he order as written does not include the entirety of the court's orders as described in the [August 6, 2010] transcript . . . ." On December 10, 2014, the court, *Winslow, J.*, granted the plaintiff's motion for clarification and issued a clarification of the August 6, 2010 order. The clarified order reflected the oral orders issued at the August 6, 2010 hearing; specifically, the clarified order stated, in relevant part, that "proceeds over $300,000 are to be held in escrow by the real property attorney handling the sale, pending further hearing and decision by the court." On April 6, 2015, the court, *Shaban, J.*, granted the plaintiff's motion for contempt and found the defendant in contempt for failing to place the proceeds of the sale in escrow. This appeal followed.

We begin by setting forth the relevant standard of review. "[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

The defendant argues that the order that served as the basis for the court's finding of contempt was not clear and unambiguous. Specifically, she argues that because Judge Winslow granted the plaintiff's motion for clarification and issued "a completely new written order that comported only with what was stated orally during the [August 6, 2010] hearing," the original written order must have been unclear. We disagree.

"[A] person must not be found in contempt of a court order when ambiguity either renders compliance with the order impossible, because it is not clear enough to put a reasonable person on notice of what is required for compliance, or makes the order susceptible to a court's arbitrary interpretation of whether a party is in compliance with the order." *In re Leah S.*, supra, 284 Conn. 695. The defendant argues that the court's August 6, 2010 written order made "no mention of escrowing any proceeds," and that "[i]t is not incumbent upon a party to attempt to reconcile what appears to be a

complete written embodiment of the court's intentions by examination of transcripts to search for possible inconsistencies." She argues that the court "clearly stated its decision in writing and the defendant had a legal right, pursuant to [Practice Book] § 64-1, to rely on the court's written order as issued . . . ."

The defendant's argument is contradicted by the transcript of the August 6, 2010 hearing on the defendant's motion for order. At that hearing, Judge Winslow issued a clear and unambiguous oral order that "[a]ny additional proceeds [from the sale of the property] above $300,000 are to be held in escrow pending further hearing . . . ." The defendant was present and did not object when Judge Winslow said that it would be necessary "for an order to be presented to the court—*not an order in this case*, but a document for the land records," and when the court emphasized that the written order did not represent the entirety of its oral orders. Judge Winslow specifically noted that "I'm not really granting the order as written," and that "there [were] additional orders that [she] made . . . ." The defendant acknowledged that the written order did not include "any of the other details [the court] alluded to," and she did not request that the court issue a written copy of the order in its entirety. Because the court issued a clear oral order instructing the defendant to hold any proceeds of the sale in escrow, we conclude that the underlying order was sufficiently clear and unambiguous as to support a judgment of contempt.

We must next determine whether the trial court abused its discretion in issuing a judgment of contempt. The defendant argues that her actions were not wilful, and therefore could not serve as a basis for a finding of contempt, because she "had no reason to believe that the court's full intentions were not codified in the written order . . . ." As set forth previously, however, the defendant was present in court when Judge Winslow explicitly stated that she was "not really granting the order as written" and noted, in issuing the written order, that "as we all know, however, there are additional orders that I've made today, somewhat restricting the procedure upon a sale." As such, the defendant's argument that she had "no reason to believe that the court's full intentions were not codified in the written order" does not have merit.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant's cross appeal from the judgment granting the plaintiff's motion to modify eventually was consolidated with her subsequent appeal from the court's March 30, 2010 judgment valuing the Schwab account.

[2] General Statutes § 37-3a states, in relevant part, that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable."

[3] As this court set forth in great detail in *Bruno* v. *Bruno*, supra, 132 Conn. App. 352–54, the determination of precisely how much the plaintiff owed

the defendant pursuant to the division of the Schwab account was in flux for several years. We explained: "Pursuant to the terms of the judgment of dissolution, the defendant was awarded $300,000 out of the Schwab account, which the court identified as containing $2,451,343.62 as of August 31, 2007. In addition, the court ordered that a debt in the amount of $22,826 was to be paid out of the Schwab account. The remainder of the Schwab account was to be divided equally between the parties. As previously noted, the defendant filed several appeals that stayed the property distribution provided for in the judgment of dissolution. See Practice Book § 61–11. On September 2, 2008, the defendant filed a motion to terminate the stay, which the court, *Hon. Sidney Axelrod*, judge trial referee, denied on October 14, 2008. On August 31, 2009, the defendant withdrew her appeals. The plaintiff, however, did not transfer the assets in the Schwab account, prompting the defendant to file a motion for contempt on September 18, 2009. The court, *Winslow, J.*, heard argument on the motion for contempt on December 22, 2009. The court did not hold the plaintiff in contempt, but ordered that the plaintiff comply with the dissolution orders forthwith. In addition, the court held that, for purposes of dividing the account, the parties were to determine the value of the account as of the date of dissolution. On January 4, 2010, the plaintiff appealed from Judge Winslow's order on the motion for contempt. The defendant filed a motion to terminate the stay associated with that appeal on January 14, 2010.

"On March 8, 2010, the court heard argument on the defendant's motion to terminate the stay. At the hearing, the plaintiff testified that a certain asset in the Schwab account had decreased in value since the date of dissolution due to market conditions. The plaintiff also testified that he had withdrawn funds from the Schwab account to meet his living expenses. At the conclusion of the hearing, the court issued an order on the defendant's motion to terminate the stay, concluding that no stay was in place, but, to the extent that there was a stay, it was terminated. In addition, the court ordered that the 'division of assets will be as of the date the defendant withdrew her appeal.' The defendant filed a motion to reargue on March 15, 2010, which the court denied by memorandum of decision filed March 30, 2010. In its memorandum of decision, the court held that the account was to be divided as of August 30, 2009, the date the defendant withdrew her appeals. The court concluded that any funds withdrawn by the plaintiff needed to 'be added back in to determine the amounts due to each party as of August 30, 2009.' The court also held that '[a]ny interest or dividends added to the account from the [date of dissolution] to August 30, 2009, and any diminution [in value] of the account due to the market conditions should not be attributed as a benefit to or assessed as a burden against one party or the other.'

"On July 2, 2010, the court conducted a hearing to determine the amounts owed to each party out of the Schwab account. After calculating the value of the account as of August 31, 2009, the court awarded the defendant $1,404,337.26 and $88,941.36 in interest." (Footnote omitted.) *Bruno* v. *Bruno*, supra, 132 Conn. App. 352–54. As noted previously, the defendant subsequently appealed from the court's valuation of the account. On December 6, 2011, this court held that the trial court had erred in valuing the account as of August 30, 2009, and remanded the case for a determination of the value of the account as of March 17, 2008. Id., 354–55, 357.

On September 30, 2014, the court issued a memorandum of decision in which it noted that "[f]ollowing [the] prehearing conference in February, 2014, the parties agreed and stipulated that the value of the Schwab account as of March 17, 2008 was $1,942,000." The court adopted the stipulation of the parties "as its finding as to the value of the account on that date," and noted that the court could "now recommence its determination of the amounts to be distributed from the account and rule on the defendant's motion for contempt." In a footnote, the court noted that "[a] hearing on [the defendant's] motion [for contempt] was originally commenced by the court, *Hon. Sidney Axelrod*, judge trial referee, but was not completed. Because of the significant length of time that would elapse before Judge Axelrod would have again been available to proceed to complete the matter, the court declared a mistrial as to that motion." The court then determined how much was owed to the defendant pursuant to the division of the Schwab account.

[4] The defendant argues that because the plaintiff failed to show why interest at the "presumptive rate" of 10 percent should not apply, "[t]he court was not at liberty to act as [the] plaintiff's advocate and substitute its 'broad discretion' for [the] plaintiff's failure to present material evidence

on the issue." In making this argument, the defendant relies on language used by this court in *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 97 Conn. App. 541, 570, 905 A.2d 1214, cert. denied, 280 Conn. 942, 912 A.2d 479 (2006), in which we stated: "[W]hen a statute provides for a presumptive rate of allowable interest, it is the *defendants'* burden to establish that some lesser rate ought to apply." (Emphasis in original.) Id. It would appear that the later Supreme Court cases of *DiLieto* and *Sosin* have implicitly overruled the precedential value of this isolated sentence from the Appellate Court case of *Suffield Development*.

[5] The defendant also argues that "in light of the plaintiff's unclean hands, the court should not have allowed the plaintiff to invoke the contempt powers of the court in the first instance." The court, in rendering its decision on the plaintiff's motion for contempt, did find that "the plaintiff approaches the court with unclean hands," and noted that, as a result, it would not "enter any orders beyond finding the defendant in contempt for her failure to ensure the escrow of certain funds . . . ." In reviewing the defendant's claim on appeal, we note that "[a]pplication of the doctrine of unclean hands rests within the sound discretion of the trial court. . . . The exercise of [such] equitable authority . . . is subject only to limited review on appeal. . . . The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action." (Internal quotation marks omitted.) *Nuzzi* v. *Nuzzi*, 164 Conn. App. 751, 763, 138 A.3d 979, cert. granted, 323 Conn. 902, 150 A.3d 684 (2016). We further note that our Supreme Court has held specifically that the doctrine of unclean hands "should be applied in the trial court's discretion to promote public policy and the integrity of the courts, and *is not one of absolutes*." (Emphasis added.) *DeCecco* v. *Beach*, 174 Conn. 29, 35, 381 A.2d 543 (1977). In this case, the trial court agreed with the defendant that the plaintiff had approached the court with unclean hands, and adjusted its judgment accordingly, such that no sanctions were imposed following the finding of contempt. The court did not abuse its discretion.