JANAK C. DESAI *v.* HEMANGINI K. DESAI
(AC 29559)

Gruendel, Beach and Alvord, Js.

Argued October 21, 2009—officially released February 2, 2010

*Louis Kiefer*, for the appellant (plaintiff).

*Thomas C. C. Sargent*, for the appellee (defendant).

Opinion

BEACH, J. In this marital dissolution action, the plaintiff, Janak C. Desai, appeals from the judgment of the trial court dissolving his marriage to the defendant, Hemangini K. Desai. The plaintiff claims that the court improperly (1) ordered joint custody while (a) ordering that the defendant be the ultimate decision maker and (b) determining that the minor child's primary residence be with the defendant, (2) made certain factual findings regarding the finances of the marital home and (3) ordered an unequal distribution of the marital assets in view of (a) a $19,000 prior contribution by the plaintiff's parents and (b) the short length of the marriage and the court's finding that the plaintiff's physical violence caused the breakdown of the marriage. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The parties were married in London, England, on March 29, 1999, and are the parents of one child, born in 2002. On February 26, 2007, the plaintiff filed a complaint seeking dissolution of the marriage, sole physical custody and joint legal custody of the parties' minor child and financial relief. On December 19, 2007, a trial was held, following which the court rendered a

judgment of dissolution. In its memorandum of decision, the court noted the defendant's assertion that the marital breakdown occurred as a result of several acts of violence committed by the plaintiff and directed toward her.

Pursuant to the terms of the judgment, the parties were awarded joint legal custody and shared physical custody of the minor child, who was to reside primarily with the defendant at the marital home. According to the terms of the joint legal custody award, the parties were to attempt in good faith to make joint decisions. If the parties were unable to come to an agreement, then they were ordered to try to resolve their dispute through mediation. Should mediation be unsuccessful, however, the defendant was to be the ultimate decision maker.

The court also made certain factual findings with regard to the parties' financial assets. It determined that the parties' Fairfield residence was purchased with a first mortgage in the amount of $250,000 and a second mortgage in the amount of $31,260. The court did not credit the plaintiff's claim that his parents loaned him $19,000 for the purchase of the marital home because there was no documentary evidence to support it. The court determined that the Fairfield residence had a present value of $490,000. In ordering a division of the marital property, the court ordered that "[a]ll of the right, title and interest" in the Fairfield residence be conveyed to the defendant, subject to a $50,000 mortgage to the plaintiff payable upon the earliest of (1) a voluntary sale of the home by the defendant, (2) the defendant's death or remarriage or (3) five years. The plaintiff appealed from the court's judgment.

We first set forth our standard of review. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in

domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record or as a whole. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Daddio* v. *O'Bara*, 97 Conn. App. 286, 291, 904 A.2d 259, cert. denied, 280 Conn. 932, 909 A.2d 957 (2006).

I

The plaintiff makes two claims with regard to the court's order of joint custody. First, the plaintiff claims that the court could not lawfully order that the defendant be the ultimate decision maker, after having ordered that the parties share joint custody, because such award eroded the plaintiff's ability to participate equally in important decisions. The plaintiff next argues that the court's decision to make the defendant the ultimate decision maker and to order that the minor child primarily reside with the defendant was motivated by gender bias. We disagree.

A

The plaintiff argues that the court's award of ultimate decision-making power to the defendant was inconsistent with the award of joint custody because it was

inconsistent with the definition of joint custody set forth in General Statutes § 46b-56a (a). Section 46b-56a (a) defines " 'joint custody' " for the purposes of that section as "an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents. The court may award joint legal custody without awarding joint physical custody where the parents have agreed to merely joint legal custody." The plaintiff first argues that by awarding the defendant ultimate decision-making power, the court essentially has prevented him from having joint legal custody. We disagree.

The court was authorized to issue orders regarding the custody of the minor child pursuant to General Statutes § 46b-56 (b), which provides in relevant part: "In making or modifying any [custody] order . . . the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. Such orders may include, but shall not be limited to: (1) Approval of a parental responsibility plan agreed to by the parents pursuant to section 46b-56a, (2) the award of joint parental responsibility of a minor child to both parents, which shall include (A) provisions for residential arrangements with each parent in accordance with the needs of the child and the parents, and (B) provisions for consultation between the parents and for the making of major decisions regarding the child's health, education and religious upbringing; (3) the award of sole custody to one parent with appropriate parenting time for the noncustodial parent where sole custody is in the best interests of the child; or

(4) any other custody arrangements as the court may determine to be in the best interests of the child."

Section 46b-56 (b) grants the court broad power to issue orders regarding the custody of the minor child. Section 46b-56 (b) specifically authorizes a variety of orders regarding custody, including provisions for consultation and "any other custody arrangements as the court may determine to be in the best interests of the child." The definition of joint custody in § 46b-56a (a), which is useful for, inter alia, interpreting agreements and applying presumptions, does not foreclose options authorized by § 46b-56. The court's decision regarding joint custody of the parties' minor child specifically provided the parties with a method of joint responsibility for the major decisions regarding the minor child. The court's memorandum of decision stated that the parties were to attempt to agree in good faith to make decisions regarding the minor child. If the parties were unable to reach an agreement, they were to attempt to resolve the disagreement through mediation. The defendant was to make the ultimate decision regarding any disagreement between the parties only in the event that mediation failed to resolve their dispute. The court's decision did not prevent the plaintiff from exercising a degree of decision-making power with regard to the minor child but, rather, contemplated and provided the parties with a solution for the occasion when, despite good faith and multiple attempts to reach a decision, the parties were stymied. Nothing in §§ 46b-56 or 46b-56a prevents the court from so ordering.[1]

Previously, we rejected the argument that a grant of ultimate decision-making authority to one parent is in effect an order of sole custody. In *Tabackman* v. *Tabackman*, 25 Conn. App. 366, 368–69, 593 A.2d 526

[1] The plaintiff's argument assumes that the defendant will not act in good faith. We do not so assume.

(1991), we determined that a nearly identical order was a form of joint custody, despite one spouse's ultimate authority to make decisions. We find no merit in the plaintiff's claim.

B

The plaintiff next claims that the court's orders that the defendant have ultimate authority to make decisions regarding the child and that the minor child's primary residence be with the defendant were improper because they were based solely on the defendant's gender, without any evidence supporting the decision that the defendant was better suited for those roles than the plaintiff. We disagree.

We are limited in our review to determining whether the trial court abused its broad discretion in awarding the defendant ultimate decision-making authority and ordering the minor child's primary residence to be with the defendant, based upon the best interest of the child as reasonably supported by the evidence. *Dubicki* v. *Dubicki*, 186 Conn. 709, 717, 443 A.2d 1268 (1992).

The court expressly found that "both [parents were] strongly committed to their minor child." The court noted, however, that it could not "disregard the physical violence," which it faulted for the breakdown of the parties' marriage. At trial, both of the parties stated that they had difficultly reaching mutual decisions regarding the treatment of the minor child's asthma. The defendant stated that she also suffered from asthma, which caused her to be better suited to determining the best treatment for the child's asthma. The court decided that the defendant should be the ultimate decision maker. The court also determined that the defendant would continue to reside in the marital home and that the minor child's primary residence would be with the defendant. There is no indication that the court chose the defendant to be the ultimate decision maker or that

the court chose the minor child's primary residence to be with the defendant solely on the basis of gender. Accordingly, we conclude that the court did not abuse its discretion.

## II

The plaintiff next claims that the court erroneously made two factual findings with regard to the disposition of the parties' marital home. Specifically, the plaintiff contends that the court erred (1) in determining the fair market value of the marital home to be $490,000 and (2) in finding that a second mortgage existed in the amount of $31,260, contrary to the testimony of both parties.[2] We disagree.

## A

The plaintiff first takes issue with the fact that the court determined the fair market value of the parties' marital home to be $490,000. He argues that the court should have accepted the parties' initial affidavits and the appraisal he provided, which valued the residence at $500,000. We disagree.

In its articulation, filed August 21, 2008, the court acknowledged that both parties initially had represented the value of the marital home to be $500,000. The court then noted that the defendant subsequently submitted an affidavit, on December 7, 2007, in which she claimed that the present value of the marital home was $480,000. The court, taking the second affidavit into account as well the declining real estate market,

[2] The plaintiff argues that the market value and the existence of a second mortgage matter because of their effect on the proportional distribution of marital assets. Because the plaintiff's share was fixed at $50,000 and the defendant was to receive the benefit of the equity in the home, the plaintiff claims that factual mistakes in the value of the equity transferred skewed and undermined the court's conclusion regarding how the assets should be split.

determined that a reduction of $10,000 from the parties' initial evaluation of their marital home was appropriate.

"[A] trial court has broad discretion in determining the value of property. In assessing the value of . . . property . . . the trier arrives at [its] own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value and then employs the most appropriate method of determining valuation. . . . The trial court has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as [it] finds applicable; [its] determination is reviewable only if [it] misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) *Ricciuti* v. *Ricciuti*, 74 Conn. App. 120, 126–27, 810 A.2d 818 (2002), cert. denied, 262 Conn. 946, 815 A.2d 676 (2003).

We cannot conclude that the court's finding that the marital home had a fair market value of $490,000 was clearly erroneous. The court properly assessed the value of the marital home by considering the appraisal presented by the plaintiff, the parties' opinions of the value of the marital home and its knowledge that the real estate market had declined since the appraisal had been performed. In light of the court's findings, we are not left with a firm and definite conviction that a mistake has been committed.

B

The plaintiff next claims that the court improperly determined the net equity in the marital home by deducting a second mortgage in the amount of $31,260 when that second mortgage had been paid off. We are not persuaded.

The parties purchased the marital home in 2001. The marital home was purchased with a first mortgage loan in the amount of $253,060 and a second mortgage loan in the amount of approximately $31,260. The plaintiff asserts that despite testimony by both parties to the contrary, the court found that the second mortgage on the marital home was still outstanding at the time of dissolution. The court did not make any additional factual findings as to the present value of notes secured by mortgages owed on the marital home. In its memorandum of decision, the court stated: "All of the right, title and interest in the marital home at 91 Ridgeview Avenue, Fairfield, Connecticut, shall be conveyed to the [defendant], subject to an obligation to the plaintiff in the amount of $50,000, without interest, secured by mortgage, and payable upon the sooner to occur of the following: (1) the voluntary sale of the marital home by the defendant; (2) the defendant's death or remarriage; [or] (3) [the] passage of five years. Commencing January 1, 2008, the defendant shall be responsible for real estate taxes, *both mortgages*, taxes and all expenses incidental to ownership" with regard to the marital home. (Emphasis added.) We ordered the court to articulate what it meant in stating that the defendant shall be responsible for "both mortgages." In its articulation, filed December 22, 2009, the court explained that "[t]he second mortgage, which had a principal balance of $31,260, was paid off during the first year of the marriage . . . ." It stated, therefore, that when it ordered the defendant to be responsible for "both mortgages," it intended the defendant to be responsible for the primary mortgage in the amount of $253,060 and the $50,000 mortgage that the defendant was required to execute.

The plaintiff's basic premise is that the court erroneously found that the second mortgage in the amount of $31,260 still existed despite both parties' testimony

to the contrary. The court clearly stated in its articulation that this is not what the court found. The court did find that the second mortgage note in the amount of $31,260 had been paid. Accordingly, we conclude that the court's factual findings at issue are not clearly erroneous.

### III

The plaintiff's final claim is that the court abused its discretion in the distribution of the marital assets. He claims that the court (1) did not consider the contribution by his parents in the acquisition of the marital home, (2) erred in providing for an inequitable distribution of the marital assets and (3) improperly attributed the breakdown of the parties' marriage to his physical violence. We disagree.

"Our standard of review for financial orders in a dissolution action is clear. The trial court has broad discretion in fashioning its financial orders . . . ." *Casey* v. *Casey*, 82 Conn. App. 378, 383, 844 A.2d 250 (2004). "[T]his court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented." (Internal quotation marks omitted.) *Guarascio* v. *Guarascio*, 105 Conn. App. 418, 421, 937 A.2d 1267 (2008).

### A

The plaintiff claims that the court erred by not taking into consideration the $19,000 that his parents provided to the parties for the purpose of purchasing the marital home when it drafted the property division. We disagree.

At trial, the plaintiff testified that his parents loaned the parties $19,000 to purchase the marital home, in which his parents also were living. He stated that

although the parties had not signed any promissory note evidencing this loan, it was his intention to repay his parents for the use of those moneys in purchasing the home. The defendant testified that although she was unsure of where the $19,000 came from at the time she deposited the money into the parties' joint account, it was her understanding that this money was not a loan from the plaintiff's parents. In its memorandum of decision, the court stated that "[t]he purchase price for the Fairfield residence consisted of two mortgages, the first in the amount of $250,000 and the second in the amount of $31,260. [The plaintiff] claims that $19,000 came as a loan from [his] parents, but there is no written evidence that this sum was to be treated as such."

The plaintiff argues that because the court found that the $19,000 was not a loan from his parents, it did not consider it to be a contribution of the plaintiff in the acquisition, preservation and appreciation of the marital assets. The record provides no support for this assertion. The court appears to have found that, one way or another, $19,000 had been contributed by the plaintiff's parents. The court clearly determined that if $19,000 had been given to the parties by the plaintiff's parents, that money was not an enforceable loan, notwithstanding the plaintiff's testimony to the contrary and notwithstanding the plaintiff's stated intention to repay the amount. This is simply a question of credibility. "[I]t is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Thus, if the court's dispositive finding here was not clearly erroneous, then the judgment must be affirmed." (Citation omitted; internal quotation marks omitted.) *Levy, Miller, Maretz, LLC* v. *Vuoso*, 70 Conn. App. 124, 130–31, 797 A.2d 574 (2002). In light of the conflicting testimony and the

absence of any documents evidencing an enforceable loan, this finding was not clearly erroneous.

## B

The plaintiff next claims that the court abused its discretion in ordering an unequal distribution of assets. The plaintiff contends that the court should have ordered a more equal distribution of the marital assets in light of the short length of the marriage. Furthermore, the plaintiff argues that the court impermissibly used its finding that he was physically abusive to justify its inequitable distribution of the marital property. We are not persuaded.

As stated previously, the court ordered the plaintiff to convey to the defendant his right, title and interest in the marital home subject to a $50,000 mortgage to be paid at the sooner of (1) the voluntary sale of the marital home; (2) the defendant's death or remarriage; or (3) the passage of five years. The court also ordered that each party keep the assets listed on his or her financial affidavit. In addition, the court stated that all the marital personal property was to be distributed in equal shares according to its value. The court prefaced these orders with a discussion of the factual background of the case, including acts of violence by the plaintiff and the statement that "the cause of the [marital] breakdown lies primarily with the [plaintiff]."

"In fashioning its financial orders, the court has broad discretion, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their

testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Citation omitted; internal quotation marks omitted.) *Mann* v. *Miller*, 93 Conn. App. 809, 812, 890 A.2d 581 (2006).

"General Statutes § 46b-81 (c) directs the court to consider numerous separately listed criteria. No language of presumption is contained in the statute. Indeed, § 46b-81 (a) permits the farthest reaches from an equal division as is possible, allowing the court to assign to either the husband or wife all or any part of the estate of the other. On the basis of the plain language of § 46b-81, there is no presumption in Connecticut that marital property should be divided equally prior to applying the statutory criteria." (Internal quotation marks omitted.) *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 332, 913 A.2d 1096 (2007).

In its memorandum of decision, the court stated that it "carefully considered the criteria set forth in §§ 46b-81 and 46b-82 in entering its orders." The court found the plaintiff to be responsible for the breakdown of the marriage. It also stated that "[d]espite the brevity of the marriage, the court cannot disregard the physical violence." The court clearly considered the statutory criteria set forth in § 46b-81. These factors include "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. . . ." General Statutes § 46b-81 (c). There is no additional requirement that the court specifically state how it weighed these factors or explain in detail the importance it assigned to these factors. See *Chyung* v. *Chyung*, 86 Conn. App. 665, 669–70, 862 A.2d 374 (2004), cert. denied, 273 Conn.

904, 868 A.2d 744 (2005). Accordingly, the plaintiff's argument fails.

The judgment is affirmed.

In this opinion the other judges concurred.