******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# SRINIVAS KAMMILI *v.* SAISUDHA KAMMILI
## (AC 41576)

Alvord, Prescott and Lavery, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court dissolving his marriage to the defendant, claiming that the trial court inequitably distributed the parties' marital property, improperly declined to admit many of his exhibits into evidence, and failed to address several of his pretrial motions in a timely manner. *Held*:

1. The trial court did not abuse its discretion in distributing the marital property, this court having concluded that, based on a consideration of the plaintiff's arguments and an independent review of the overall distribution and the record, that the court's distribution of the property was not improper; the trial court could have concluded from the defendant's testimony and other evidence that the defendant did not withdraw funds from the parties' joint bank accounts in violation of the automatic court orders, and, based on that conclusion and the relevant statutory criteria, decided that it was appropriate to allow each party to retain his or her respective bank accounts as part of the overall distribution of marital property; moreover, because the plaintiff agreed with the trial court that it did not have jurisdiction to distribute property not owned by either party, he waived that part of his claim concerning the distribution of real property owned by the defendant's father, and, taking into account the financial standing of the parties at the time of trial, the trial court's order to sell one of the parties' homes was not improper; furthermore, in light of this court's decision in *Picton* v. *Picton* (111 Conn. App. 143), and having reviewed the trial court's overall distribution of marital property and the record, the trial court did not improperly order that the plaintiff either return the defendant's jewelry to her or forfeit $50,000 of his share of the proceeds from the sale of one of their homes.

2. This court declined to review the plaintiff's claim that the trial court abused its discretion when it declined to admit his exhibits into evidence due to an inadequate record; the plaintiff never requested that any of the excluded exhibits be marked for identification, and he did not point to an adequate substitute in the record that would allow this court to analyze the contents of his excluded evidence.

3. The trial court did not abuse its discretion by not adjudicating the plaintiff's outstanding pretrial motions until after the trial concluded, the plaintiff having failed to demonstrate that he was harmed by either the timing or substance of the trial court's decisions; at a pretrial status conference the plaintiff indicated, after the trial court had addressed various discovery issues, that he had everything he needed to try the case thereby conceding that he was not harmed by the timing of the court's adjudication of his discovery related pretrial motions; moreover, the plaintiff did not assert that the court incorrectly denied any of his pretrial motions and could not demonstrate that he was harmed by the substance of the court's decisions.

Argued December 9, 2019—officially released June 2, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Prestley, J.*, rendered judgment dissolving the marriage and granting certain other relief, from which the plaintiff appealed to this court. *Affirmed.*

*David V. DeRosa*, for the appellant (plaintiff).

*Steven R. Dembo*, with whom were *Caitlin E. Koz-*

*loski*, and, on the brief, *P. Jo Anne Burgh*, for the appel-
lee (defendant).

*Opinion*

PRESCOTT, J. The plaintiff, Srinivas Kammili, appeals from the judgment of the trial court dissolving his marriage to the defendant, Saisudha Kammili. The plaintiff makes numerous claims[1] on appeal, including that the trial court (1) improperly declined to admit many of his exhibits into evidence, (2) failed to address several of his pretrial motions in a timely manner, and (3) inequitably distributed the marital property, specifically, the parties' bank accounts, real property, and certain gold jewelry.[2] We disagree with the plaintiff and, accordingly, affirm the judgment of the court.

The record reveals the following facts and procedural history. The plaintiff commenced this marital dissolution action on March 30, 2017. The parties tried the case to the court on January 25 and 26, 2018. Although the plaintiff was represented by an attorney when he commenced this action, he ultimately represented himself at trial.

The trial court issued a memorandum of decision on April 3, 2018, in which it dissolved the parties' marriage and, among other things, distributed the parties' assets.[3] The court, in its decision, also entered additional orders concerning, inter alia, eleven outstanding pretrial motions.

On April 19, 2018, the plaintiff filed a motion to reargue, in which he raised, inter alia, many of the claims he brings in this appeal. The court denied the plaintiff's motion to reargue. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first argues that the trial court improperly declined to admit "at least [twenty]" of his exhibits into evidence because he failed to comply with the trial management order.[4] Moreover, the plaintiff asserts that the trial court's refusal to admit his exhibits harmed him because it prevented the court from comprehending his assertion that certain real property in India, which was owned in whole or in part by individuals other than the parties to the action, should nonetheless be distributed as marital property.[5] Ultimately, the plaintiff claims that the court's refusal to admit many of his exhibits constituted an abuse of discretion. We decline to review this claim.

We begin by stating the well settled principles concerning this court's ability to review a party's evidentiary claims. "It is the responsibility of the appellant to provide an adequate record for review." Practice Book § 61-10 (a); see also Practice Book § 60-5. Importantly, if a party challenging an evidentiary ruling on appeal "failed to have [an excluded exhibit] marked for identification, it is not part of the record and [this court is] unable to review the ruling which excluded it from

admission into evidence." *Carpenter* v. *Carpenter*, 188 Conn. 736, 745, 453 A.2d 1151 (1982).[6] Moreover, "[a]lthough we allow [self-represented] litigants some latitude, *the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law*." (Emphasis added; internal quotation marks omitted.) *Traylor* v. *State*, 332 Conn. 789, 806, 213 A.3d 467 (2019).

In the present case, the court admitted four of the exhibits that the plaintiff offered at trial. As for exhibits that the trial court excluded, the plaintiff never requested that any of these exhibits be marked for identification. Indeed, in his reply brief, the plaintiff admits as much. Because the plaintiff failed to request that his excluded evidence be marked for identification, and he has not pointed us to, nor are we aware of, an adequate substitute in the record that would allow us to analyze the contents of his excluded evidence, we conclude that the record is inadequate to review his evidentiary claim.[7]

II

The plaintiff next claims that the trial court abused its discretion by not considering eleven of his pretrial motions in a timely manner. The plaintiff asserts that the court improperly delayed consideration of his pretrial motions because he failed to comply with the trial management order. He does not assert, however, that the court ultimately decided the motions incorrectly. In essence, the plaintiff argues that, by not hearing his motions in a timely manner, he was precluded from obtaining certain information from the defendant through discovery and that this prevented him from providing the court with the information that it needed to distribute marital assets equitably. We disagree.

We review a party's challenge to a court's decision regarding docket management for an abuse of discretion. See, e.g., *Aldin Associates Ltd. Partnership* v. *Hess Corp.*, 176 Conn. App. 461, 476, 170 A.3d 682 (2017). Although a trial court has broad discretion in managing its docket; see *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 182, 73 A.3d 742 (2013); "a trial court must consider and decide on a reasonably prompt basis all motions properly placed before it . . . ." *Ahneman* v. *Ahneman*, 243 Conn. 471, 484, 706 A.2d 960 (1998).

The following additional facts are relevant to our resolution of this claim. On October 10, 2017, the court ordered that all pending pretrial motions were to be considered at trial.[8] In its memorandum of decision, the court decided ten of the plaintiff's pretrial motions and one of the defendant's pretrial motions.[9] The court denied all pending pretrial motions, except for one of the plaintiff's motions, which the court granted in part.[10] Of the plaintiff's pretrial motions that the court denied,

only two can be read as pertaining to discovery issues that may have required resolution prior to trial. The remaining motions that the court denied in its memorandum were either moot[11] or were of a nature that they did not need to be resolved before trial.[12]

The plaintiff's claim that he was harmed by the timing of the court's adjudication of his pending pretrial motions fails for two reasons. First, to the extent that the plaintiff argues that he was harmed by the court's deciding his pretrial motions pertaining to his discovery requests in its memorandum of decision that it issued after the trial had concluded, his argument is unpersuasive. Indeed, at a status conference held on December 1, 2017, the plaintiff indicated, after the court had addressed various discovery issues, that he had everything that he needed to try the case. Moreover, the plaintiff concedes in his appellate brief that "[t]here was extensive discovery, including interrogatories and depositions . . . [and that] [t]here was very little that each side did not know about the other sides' position, given the extent of discovery." In light of these statements, the plaintiff has conceded that he was not harmed by the timing of the court's adjudication of his discovery related pretrial motions.

Second, the plaintiff does not assert that the court incorrectly denied any of his ten pretrial motions. Because he does not argue that the court incorrectly denied any of these motions, the plaintiff cannot demonstrate that he was harmed by the substance of the court's decisions. Therefore, because the plaintiff has failed to demonstrate that he was harmed by either the timing or substance of the trial court's decisions on his pretrial motions, we reject his claim that the trial court abused its discretion by not adjudicating his outstanding pretrial motions until after the trial concluded.

### III

The plaintiff next claims that the trial court's orders pertaining to the distribution of marital property were improper for various reasons. Specifically, the plaintiff argues that the trial court's distribution of the parties' bank accounts,[13] real property, and certain gold jewelry constituted an abuse of discretion. We disagree.

Before addressing the plaintiff's claim and each of its parts, we set forth our well settled standard of review of a trial court's orders pertaining to the distribution of marital property. Our Supreme Court has stated: "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has

abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Powell-Ferri* v. *Ferri*, 326 Conn. 457, 464, 165 A.3d 1124 (2017). Furthermore, "[i]n reviewing the trial court's [orders distributing marital property] under [the abuse of discretion] standard, we are cognizant that [t]he issues involving [these] orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 481, 850 A.2d 227, cert. denied, 271 Conn. 903, 859 A.2d 562 (2004).

In fashioning orders that distribute marital property, "General Statutes § 46b-81 (c) directs the court to consider numerous separately listed criteria. . . . [Section] 46b-81 (a) permits the farthest reaches from an equal division as is possible, allowing the court to assign to either the husband or wife all or any part of the estate of the other. On the basis of the plain language of § 46b-81, *there is no presumption in Connecticut that marital property should be divided equally* prior to applying the statutory criteria." (Emphasis added; internal quotation marks omitted.) *Desai* v. *Desai*, 119 Conn. App. 224, 238, 987 A.2d 362 (2010).

The following facts are relevant to our resolution of this claim. On August 29, 2017, the trial court issued a pendente lite order regarding funds contained in a brokerage account owned by both parties. At the defendant's request, and with the plaintiff's agreement, the court ordered that the brokerage account be liquidated. The court also ordered the parties to use the proceeds from the sale of stocks held in the brokerage account to cover expenses such as tuition for one of the parties' children, health insurance for both parties and their children, and the mortgage payments on the marital home. In addition, the court ordered that, after these expenses were paid, any remaining proceeds from the stock sales were to be divided evenly between the parties.

After a trial in which various issues concerning property distribution were addressed, the court distributed the marital property in its memorandum of decision. The court ordered that the parties retain control over their own bank accounts. In the most recently filed financial affidavits that were before the trial court at the time of trial, the plaintiff averred that he had a total net value of -$168.50 in his bank accounts, and the defendant averred that she had a total net value of $1013 in her bank accounts.[14]

In addition, the court distributed the parties' real

property in the United States and India. First, with respect to the properties in the United States, the court awarded three properties to the defendant, two properties to the plaintiff, and ordered that one property be sold. Specifically, the court awarded the defendant the marital home in Windsor (Windsor home), which the court found had a fair market value of $365,000. The court also ordered the plaintiff to immediately vacate the home in Illinois (Illinois home) so that this property could be sold. In its memorandum, the court found that this property had a fair market value of $630,000 and noted that it already had been marketed by a real estate agent but had not yet sold at the time of trial. Per the court's order, the proceeds of this property's sale were to be used to cover "all outstanding real estate and closing costs, outstanding tax liabilities on any of the United States properties . . . 100 [percent] of the appraisal fees for any appraisals done in this case . . . [and] [a]ttorney's fees of up to $10,000 per party . . . ."[15] After covering these liabilities and expenses, any remaining proceeds from the sale of the Illinois home were to be split evenly between the parties. The court ordered, however, that "[i]f the plaintiff has not paid his share of the child's college expenses, as ordered and agreed upon previously, or made any other payments ordered during the pendente lite period, that amount shall be deducted from his share of the proceeds [from the sale of the Illinois home] and paid to the defendant."[16]

Aside from the Windsor and Illinois homes, there were four other properties in the United States that the parties owned. The court ordered that the plaintiff and the defendant each receive two of these four remaining properties. Of the four properties, the plaintiff received two properties with a total fair market value of $142,400, and the defendant received two properties with a total fair market value of $170,000.

With respect to the real property in India, the court ordered that "each party shall retain any properties held jointly with family members or gifted specifically to that party." There were six properties in India that either the parties did not co-own with a family member or that were not specifically gifted to a party. Of the six properties, the court awarded two to the defendant, one to the plaintiff, and ordered that three be sold and that the proceeds of those sales be divided equally between the plaintiff and the defendant. In effect, the court awarded properties with a total fair market value of $525,229.50 to the plaintiff and properties with a total fair market value of $911,034.50 to the defendant.

As for personal property, the court found that the plaintiff had the defendant's jewelry. The court awarded the defendant "[a]ny gold jewelry or jewelry belonging to [her] or the children . . . ." Moreover, the court ordered the plaintiff to "return to the defendant any

other gold or jewelry that he . . . removed from Connecticut or that is in his possession." The defendant testified that this jewelry was valued at $200,000 and requested that the court order the plaintiff to pay her $200,000 if he failed to return the jewelry to her. The court ordered, in its memorandum of decision, that, "[i]f [the plaintiff] claims that he does not have the gold jewelry or fails to return it within [thirty] days, the defendant shall receive the first $50,000 of the proceeds to which the plaintiff is entitled from the sale of the Illinois [home]."

In support of his claim that the court's distribution of marital property constituted an abuse of discretion, the plaintiff sets forth multiple arguments. He first argues that the trial court improperly ordered the parties to retain their own bank accounts[17] because, in doing so, the court failed to account for the approximately $80,000 which, he asserts, the defendant withdrew from bank accounts held in joint name in violation of the automatic orders filed on April 6, 2017.[18] Moreover, the plaintiff asserts that, even though the defendant testified that she withdrew this money from the parties' joint bank accounts to cover expenses, she had, in fact, already been awarded funds to cover these expenses in the court's August 29, 2017 order liquidating the brokerage account. Thus, the plaintiff contends that, because the defendant removed money from the joint bank accounts in violation of the automatic orders to cover expenses for which she was already provided funds, the trial court should have awarded him some compensation for the funds that the defendant withdrew. We are not persuaded by the plaintiff's argument.

At trial, the defendant testified that she removed funds from the joint bank accounts between early 2016 and May, 2017 to cover certain expenses. She also testified, however, that she had done so with the plaintiff's consent.

We are mindful that, in fashioning orders concerning the distribution of marital property, the trial court is in the best position to assess the evidence and testimony before it. See *Leo* v. *Leo*, 197 Conn. 1, 4, 495 A.2d 704 (1985); *Desai* v. *Desai*, supra, 119 Conn. App. 237–38. Thus, the trial court in the present case could have concluded from the defendant's testimony and other evidence before it that the defendant did not withdraw funds from the joint bank accounts in violation of the automatic orders and, based on this conclusion and the relevant statutory criteria, decided that it was appropriate to allow each party to retain his or her respective bank accounts as part of the overall distribution of marital property. Moreover, having considered the court's overall distribution of marital property, and based on our independent review of the record, we conclude that the court's order distributing to each party his or her respective bank accounts was not

improper.

The plaintiff next argues that the trial court's distribution of real property between him and the defendant was improper because the court failed to include certain real property as part of its distribution of marital property, declined to award him one of the homes in the United States that the parties owned, and did not adequately weigh his financial contribution in obtaining assets prior to the marriage. We are not persuaded for the reasons that follow.

In support of this argument, the plaintiff first asserts that the trial court incorrectly failed to award certain real property in India that was owned by the defendant's father. At trial, the plaintiff requested that the trial court consider evidence purporting to establish that certain real property owned by the defendant's father was, in fact, marital property. The court stated, however, that it did not have the authority to distribute property owned by someone other than the plaintiff or the defendant.[19] Importantly, the plaintiff *agreed* with the court that it did not have jurisdiction to award property owned by neither party.[20] Because the plaintiff agreed with the trial court that it did not have jurisdiction to distribute property owned by neither party, the plaintiff has waived the part of his claim concerning the distribution of real property owned by the defendant's father, and, accordingly, we decline to review it. See *O'Hara* v. *Mackie*, 151 Conn. App. 515, 522, 97 A.3d 507 (2014) ("[w]hen a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal" (internal quotation marks omitted)).[21]

The plaintiff next asserts that the court improperly required him to transfer all interest he had in the Windsor home to the defendant while requiring him to vacate the Illinois home so that it could be sold. In essence, the plaintiff contends that, in distributing the marital property, it was improper for the court to not award him one of the homes.

In addressing this assertion, we are mindful that the trial court has broad discretion in awarding marital property, even if its orders result in an unequal property distribution. *Desai* v. *Desai*, supra, 119 Conn. App. 238 ("§ 46b-81 (a) permits the farthest reaches from an equal division as is possible, allowing the court to assign to either the husband or wife all or any part of the estate of the other" (internal quotation marks omitted)); see also *Elliott* v. *Elliott*, 14 Conn. App. 541, 543, 548, 541 A.2d 905 (1988) (trial court did not abuse discretion in awarding 65 percent of proceeds of sale of marital residence to defendant and 35 percent to plaintiff). Thus, the fact that the defendant was awarded one of the homes and the plaintiff was not awarded one does not necessarily mean that the court's distribution of marital property was improper, as the plaintiff implies.

In the present case, the court ordered that the proceeds from the sale of the Illinois home be used to cover the parties' tax liabilities and other expenses. After these liabilities and expenses were covered, each party would then receive an equal share of the remaining proceeds. Indeed, based on the financial affidavits of both parties, which demonstrated that the parties had substantial liabilities, the court reasonably could have concluded that the Illinois home needed to be sold to provide the parties with cash to satisfy their liabilities. Taking into account the financial standing of the parties at the time of trial, and based on our independent review of the court's overall distribution of marital property and the record, we conclude that the court's order to sell the Illinois home was not improper.

The plaintiff also asserts that the overall award of property was improper because the trial court did not consider the plaintiff's financial contribution in obtaining assets prior to the marriage. In essence, the plaintiff argues that the court's distribution was improper because the court was required to, but ultimately did not, "consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates," as required by § 46b-81 (c).

Section 46b-81 (c) enumerates several factors that a trial court must consider when fashioning an order distributing marital property. The contribution of each party to the purchase of property is but one factor. See General Statutes § 46b-81 (c). "There is no . . . requirement that the court specifically state how it weighed these factors or explain in detail the importance it assigned to these factors." *Desai* v. *Desai*, supra, 119 Conn. App. 238. Moreover, when a trial court states in its memorandum of decision that it has considered the factors listed in § 46b-81 (c) in fashioning an order distributing marital property, the "judge is presumed to have performed [his or her] duty unless the contrary appears [from the record]." (Internal quotation marks omitted.) *Picton* v. *Picton*, 111 Conn. App. 143, 152, 958 A.2d 763 (2008), cert. denied, 290 Conn. 905, 962 A.2d 794 (2009).

In its memorandum of decision, the trial court stated that it "fully considered the criteria of . . . § 46b-81 . . . as well as the evidence, applicable case law, the demeanor and credibility of the parties and witnesses and arguments of counsel in finding the facts and in reaching the conclusions reflected in [its] orders . . . ." The plaintiff has neither pointed us to, nor are we aware of, anything in the record that would dispute the accuracy of this statement. Thus, we reject the plaintiff's assertion that the trial court improperly failed to consider the factors set forth in § 46b-81 (c) when fashioning its orders to distribute the marital property.

The plaintiff's final argument is that the trial court improperly awarded all of the jewelry in his possession to the defendant and ordered that he forfeit $50,000 of his share of the proceeds of the sale of the Illinois home if he failed to return the jewelry to the defendant. We are not persuaded by this argument.

In reviewing this part of the plaintiff's claim, we are mindful that "the [trial] court, as the trier of fact and thus the sole arbiter of credibility, [is] free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 357, 999 A.2d 713 (2010). In the present case, the trial court chose to credit the defendant's evidence and testimony demonstrating that the plaintiff took the jewelry belonging to her and the children from a safe deposit box and would not return it until she was obedient to him. The court also discredited the plaintiff's evidence and testimony, which, according to the plaintiff, tended to show that the defendant had the jewelry and that he did not. The court, as the sole arbiter of credibility, was free to credit the defendant's testimony and discredit the plaintiff's testimony in arriving at its factual finding that the plaintiff had the jewelry. See id.

Having concluded that the plaintiff had the jewelry, the court ordered that he return it to the defendant as part of the court's overall distribution of marital property. On appeal, the plaintiff has failed to articulate a reason to support a conclusion that, in light of the court's overall distribution of marital property, the court's decision to award all of the jewelry to the defendant was improper. Moreover, having considered the court's overall distribution of marital property, and based on our independent review of the record, we conclude that the court's decision to award the defendant all of the jewelry belonging to her and their children was not improper.

As for the trial court's decision to require that the plaintiff either return the jewelry to the defendant or forfeit $50,000 of his share of the proceeds from the sale of the Illinois home, this court previously has held that a trial court, in a marital dissolution case, may, within its discretion, include an order of this nature as part of its overall distribution of marital property. See *Picton* v. *Picton*, supra, 111 Conn. App. 150–51, 153–54. In *Picton*, we concluded that the trial court properly exercised its discretion by ordering that the plaintiff could retain possession of a vacation home he owned, provided that he pay the defendant $700,000 within ninety days of judgment being entered. See id., 148, 154. If, however, the plaintiff failed to make this payment within ninety days, then the plaintiff was required to "immediately list the property for sale . . . [and] [f]rom the net proceeds of that sale . . . pay to the defendant the sum of $700,000 plus interest from the

date of judgment at the statutory rate for judgments." (Internal quotation marks omitted.) Id., 148.

In the present case, the defendant submitted into evidence a list and photographs of the jewelry at issue. The court also had before it the defendant's testimony, in which she stated that the jewelry was worth $200,000.[22] In light of this court's decision in *Picton*, and having reviewed the trial court's overall distribution of marital property and the record, we conclude that the trial court did not improperly order that the plaintiff either return the defendant's jewelry to her or forfeit $50,000 of his share of the proceeds from the sale of the Illinois home.

Having considered all of the plaintiff's arguments, and based on our independent review of the trial court's overall distribution of marital property and the record, we conclude that the court's distribution of marital property was not improper. Thus, we conclude that the court did not abuse its discretion in distributing the marital property as it did.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Within each of these claims, the plaintiff asks this court to consider several issues. In his claim concerning his pretrial motions, for example, the plaintiff argues that the court abused its discretion by failing to address *eleven* of his pretrial motions in a timely manner.

Although the number of claims that a party may bring on appeal is not limited by rule, we are mindful of what our Supreme Court has stated regarding the merits of an appeal that sets forth a multiplicity of issues. "[A] torrent of claimed error . . . serves neither the ends of justice nor the [plaintiff's] own purposes as possibly meritorious issues are obscured by the sheer number of claims that are put before [the court].

"Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one [issue]. . . . [M]ultiplying assignments of error will dilute and weaken a good case and will not save a bad one. . . .

"Most cases present only one, two, or three significant questions. . . . Usually . . . if you cannot win on a few major points, the others are not likely to help. . . . The effect of adding weak arguments will be to dilute the force of the stronger ones." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Pelletier*, 209 Conn. 564, 566–67, 552 A.2d 805 (1989).

[2] Within each of his first two claims, the plaintiff alleges that "[t]he [c]ourt violated [his] constitutional right to due process . . . ." Although the plaintiff states his constitutional right to due process was violated, he placed this claim under the same headings in which he claimed that the court abused its discretion and almost all of his analysis under these two headings focuses on whether the court abused its discretion. Indeed, the plaintiff provided nothing more than bare assertions and minimal analysis concerning his constitutional claims. Because he has not adequately briefed his constitutional claims, we decline to review them. See *State* v. *Buhl*, 321 Conn. 688, 722–29, 138 A.3d 868 (2016).

[3] The trial court issued a corrected memorandum of decision on April 17, 2018. All references throughout this opinion are to the court's corrected memorandum.

[4] The trial management order for all trials of family matters states, in relevant part, the following: "Counsel and self-represented parties are ordered to exchange with each other, and give to the Family Caseflow Office, the following documents that comply with the Trial and Hearing Management Order so that they are received not less than 10 (ten) calendar days before the assigned trial or hearing date. . . .

* * *

"2. A list of all pending motions, including motions to be decided before the start of the trial or hearing such as motions in limine and motions for protective order . . .

* * *

"6. A list of exhibits each party reasonably expects to introduce in evidence . . .

* * *

"If a party does not follow this order, the party may have sanctions imposed by the court, which may include a monetary sanction, exclusion of evidence, or the entry of a nonsuit, default or dismissal." (Emphasis omitted.)

In response to the plaintiff's failure to comply with the trial management order, the defendant filed a motion in limine in which she "move[d] that the plaintiff be precluded from offering any testimonial or documentary evidence in the . . . trial . . . . The court "grant[ed] [the defendant's] motion in limine in part." The court explained its decision by stating the following: "With respect to the exhibits, if [the plaintiff] attempts to offer exhibits, I'm going to take it on a *case-by-case* [*basis*]. . . . With respect to witnesses, he has none." (Emphasis added.) At trial, the court admitted four of the plaintiff's exhibits into evidence.

[5] The plaintiff claims that "at least [twenty]" of his exhibits were excluded from evidence at trial because the court granted, in part, the defendant's motion in limine for the plaintiff's failure to comply with the trial management order. Our independent review of the transcript, however, did not uncover any examples of the court explicitly stating that it was excluding an exhibit that the plaintiff offered because he violated the trial management order. Moreover, the trial transcript is riddled with instances in which the plaintiff drew the court's attention to a document but never offered it as an exhibit for admission into evidence.

[6] This court may, however, review a claim regarding the exclusion of an exhibit that was not marked for identification "if the record reveals an adequate substitute for that exhibit." *Finan* v. *Finan*, 287 Conn. 491, 495, 949 A.2d 468 (2008). Examples of what might constitute an adequate substitute in the record include a formal offer of proof, an excluded exhibit being attached to a motion that was before the court, and other evidence in the record that would allow this court to decipher the contents of the excluded exhibit. See id., 495–96.

[7] In the alternative, the plaintiff asserts that, because he was a self-represented litigant, the court was required, but failed, to mark, sua sponte, his excluded exhibits for identification, even though he did not request that these exhibits be marked. This assertion, however, contradicts our well settled case law stating that, "[a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Traylor* v. *State*, supra, 332 Conn. 806. Thus, the fact that the plaintiff represented himself at trial bears no weight on our ultimate conclusion that the plaintiff failed to provide an adequate record for this court to review his evidentiary claim.

[8] Moreover, the court, on November 14, 2017, and January 23, 2018, repeated its order that it would take up pending motions at the time of trial.

[9] The trial court did not address the plaintiff's motion for order filed on October 19, 2017, in which the plaintiff requested that the court award him damages from the attorney who had represented him for a period of time in the present case. This motion was neither on the calendar nor marked ready. Thus, this motion was not properly before the court and, accordingly, we do not address it in this opinion.

[10] The plaintiff's motion for order pendente lite filed on October 6, 2017, was "granted, in part, as to return of the plaintiff's personal property such as trophies or other memorabilia that the defendant has in her possession."

[11] The court denied as moot the following nondiscovery related pretrial motions of the plaintiff: a motion for modification of child support and visitation; a motion to consolidate and refinance all loans belonging to the parties; and a motion to order the defendant to make minimum payments on all credit card bills and loans in the names of both him and the defendant. The court, however, addressed the issues raised in these motions—child support, visitation rights, and the distribution of debts—in its memorandum of decision.

[12] Of the plaintiff's remaining pretrial motions, the court denied the following: two motions alleging breach of fiduciary duty, breach of contractual obligation to a third party beneficiary, and breach of implied contract; a

motion to vacate the court's August 29, 2017 order to liquidate a brokerage account belonging to the parties and to order that the defendant return $72,000 to a joint bank account; and a motion to order that the defendant cease making statements that were false and misleading and to sanction the defendant and her attorney for engaging in such conduct.

[13] The term "bank accounts" used throughout this opinion refers to the checking and savings accounts attested to in both parties' financial affidavits. The term "brokerage account" used throughout this opinion refers to an account containing stocks that the court ordered the parties to liquidate in its August 29, 2017 pendente lite order.

[14] The most recent financial affidavits before the court at the time of trial were the plaintiff's May 22, 2017 affidavit and the defendant's January 15, 2018 affidavit.

[15] The court noted that the $10,000 allocated to cover the defendant's attorney's fees did "not include the $7500 that was previously awarded to the defendant during the pendente lite period."

[16] As later discussed in this opinion, the court also ordered the plaintiff to forfeit the first $50,000 of his share of the proceeds from the sale of the Illinois home to the defendant if he failed to return certain gold jewelry to her within thirty days.

[17] The plaintiff also argues, in a somewhat contradictory fashion, that the court made no orders distributing cash held in the parties' bank accounts. In its memorandum of decision, the trial court stated: "Retirement and *Bank Accounts*: The parties shall each retain their own pension/retirement accounts." (Emphasis added.) Importantly, the plaintiff did not file a motion for articulation in which he asked the court to clarify whether the court's orders distributed the parties' bank accounts in addition to the retirement accounts. Because the plaintiff failed to file a motion for articulation in which he requested that the court clarify whether it distributed the parties' bank accounts, we construe the order to include both retirement and bank accounts in light of the heading used by the court.

[18] The automatic orders state in relevant part that "[n]either party shall cause any asset, or portion thereof, co-owned or held in joint name, to become held in his or her name solely without the consent of the other party, in writing, or an order of the judicial authority."

[19] Moreover, the plaintiff, at trial, conceded that this property was owned by the defendant's father.

[20] "The Court: You cannot pursue any order on those properties [in this court]. . . .

"[The Plaintiff]: I know that, Your Honor."

[21] The plaintiff argues that the court failed to distribute properties that were gifted to the defendant or that she co-owned with a family member. With respect to this property, the court ordered that "each party shall retain any properties held jointly with family members or gifted specifically to that party." Thus, the trial court did, indeed, distribute these properties and awarded them to the defendant *because* they were either gifted to her or she co-owned them with a family member.

Moreover, the *plaintiff* also received property as a result of the court's order concerning property that was gifted or co-owned with a family member. Indeed, the court found that the plaintiff "owned" two properties that he gifted to his parents but which would "return to him in a will." The court awarded these properties to the plaintiff. For these reasons, the plaintiff's argument is meritless.

[22] The plaintiff asserts that the court improperly valued the jewelry at $50,000 without expert testimony. We disagree.

The defendant, who owned the jewelry, testified that it was worth $200,000. She also requested that the court order the plaintiff to pay her $200,000 if he failed to return the jewelry to her.

The trial court partially credited her testimony as to the value of the jewelry and valued it at $50,000, which is less than the amount that the defendant stated in her testimony. See *Porter* v. *Porter*, 61 Conn. App. 791, 799–800, 769 A.2d 725 (2001) (court's valuation of marital property was not clearly erroneous finding, even though court's valuation of property was less than valuation of property offered in testimony from both parties). A court, in valuing personal property, may rely on the testimony of its owner as to its value. See *Wolk* v. *Wolk*, 191 Conn. 328, 333, 464 A.2d 780 (1983) (concluding that court "improperly admitted [party's testimony] since [he] was neither *the owner of the jewelry* nor an expert" (emphasis added)); *Saporiti* v. *Austin A. Chambers Co.*, 134 Conn. 476, 479–80, 58 A.2d 387 (1948) (stating that "[t]estimony of the [party] as to the value of the furniture

was proper, although no qualification other than his ownership of it was shown"). Thus, the plaintiff's argument is unavailing.

———————————————