******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# BETH E. ANKETELL *v.* MARTIN KULLDORFF
## (AC 45871)

Bright, C. J., and Cradle and Sheldon, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the trial court's judgment granting the plaintiff's postjudgment motion for clarification and for postjudgment interest. In accordance with the dissolution judgment, the defendant was required to transfer $175,000 from the retirement funds of his choice to the plaintiff by way of a qualified domestic relations order (QDRO). In its decision, the trial court indicated that such amount could be adjusted to reflect any gains or losses that occurred prior to the judgment. The defendant appealed from the dissolution judgment, asserting claims of error unrelated to the division of his retirement funds. The orders of the judgment were stayed during the pending appeal, and, consequently, the retirement funds were not transferred. This court affirmed the trial court's judgment, and our Supreme Court denied the defendant's petition for certification to appeal. Thereafter, the plaintiff filed a postjudgment motion requesting that the trial court clarify whether the $175,000 award of retirement funds was to be adjusted for gains and losses prior to the time of transfer and, if it was not, that the court award the plaintiff statutory (§ 37-3a) interest. The trial court awarded the plaintiff 5 percent annual interest, pursuant to § 37-3a, for each of the three full years that the funds were not paid and for ten months of the fourth year. The trial court indicated that the accrual of interest would cease as of the issuance of its order and would begin to accrue again only if there was a delay beyond that which was necessary to prepare the QDROs. In his appeal, the defendant did not challenge the court's award of interest for the three year period during which his appeal from the dissolution judgment was pending but only claimed, inter alia, that the trial court improperly awarded interest for the ten month period of the fourth year. *Held* that the trial court's award of postjudgment interest to the plaintiff for the ten month period was not improper: contrary to the defendant's claim that the trial court abused its discretion in awarding the plaintiff postjudgment interest for the unpaid months of the fourth year because, during that time, the plaintiff and her counsel were responsible for the delay in the transfer of the funds, the trial court properly found that the defendant had wrongfully withheld the $175,000, as the parties disagreed as to whether the award was subject to adjustment for gains or losses, and the defendant did not claim, at any point during the hearing on the plaintiff's motion or during the additional time provided by the trial court thereafter for the defendant to respond to the plaintiff's request for postjudgment interest, that the plaintiff had prevented the execution of the QDROs nor did he seek to present any evidence contradicting the statement of the plaintiff's counsel that the QDRO company would not proceed with the transfer; moreover, the defendant conceded that, in arguing his appeal, he was relying on evidence that was not presented at the hearing on the plaintiff's motion, and this court declined to conclude, on the basis of evidence not presented to the trial court, that the plaintiff had refused to accept the retirement funds and that, as a result, the trial court had abused its discretion in awarding postjudgment interest; furthermore, the trial court reasonably concluded that it would not be an abuse of its discretion to compensate the plaintiff for the inequity of being deprived of the $175,000 award for an extended period, which included the period that encompassed the wrongful detention of the funds that continued until the court issued its decision on the plaintiff's postjudgment motion for clarification and interest, as such reasoning was consistent with the statutory purpose of postjudgment interest; additionally, contrary to the defendant's claim, the trial court did not award the plaintiff interest for any period after the issuance of the trial court's order, but, rather, ordered that interest would accrue again only if there was an unnecessary delay in the execution of the QDROs, which it had the authority

to do.

Argued October 12, 2023—officially released January 16, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Windham and tried to the court, *Green, J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court, *Alvord*, *Prescott* and *Lavine, Js.*, which affirmed the judgment of the trial court; thereafter, our Supreme Court denied the defendant's petition for certification to appeal; subsequently, the court, *Green, J.*, granted the plaintiff's motion for clarification and request for postjudgment interest, from which the defendant appealed to this court. *Affirmed*.

*Martin Kulldorff*, self-represented, the appellant (defendant).

*Scott T. Garosshen*, with whom was *Linda L. Morkan*, for the appellee (plaintiff).

*Opinion*

BRIGHT, C. J. In this postjudgment marital dissolution matter, the self-represented defendant, Martin Kulldorff, appeals from the judgment of the trial court awarding the plaintiff, Beth E. Anketell, postjudgment interest pursuant to General Statutes § 37-3a. On appeal, the defendant claims that the court abused its discretion in awarding the plaintiff postjudgment interest for certain time periods. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties married in 2011, and the plaintiff initiated the dissolution action in 2016. After a two day court trial in September, 2018, the court, *Green*, *J.*, rendered judgment dissolving the parties' marriage on December 3, 2018. The court ordered, inter alia, that the "[d]efendant shall transfer $175,000 to the plaintiff from retirement funds/accounts of his choice by way of a qualified domestic relations order [(QDRO)]. . . . This figure may be adjusted to reflect any gains or losses that have occurred prior to the judgment." The defendant appealed and asserted claims of error unrelated to the division of his retirement funds.[1] This court affirmed the judgment; *Anketell* v. *Kulldorff*, 207 Conn. App. 807, 810, 263 A.3d 972, cert. denied, 340 Conn. 905, 263 A.3d 821 (2021); and our Supreme Court denied the defendant's petition for certification to appeal on November 30, 2021. *Anketell* v. *Kulldorff*, 340 Conn. 905, 263 A.3d 821 (2021).

On January 7, 2022, the plaintiff filed a postjudgment motion to implement court orders. In that motion, the plaintiff stated that the parties disagreed as to how to implement the court's orders regarding counsel fees.[2] The plaintiff's counsel, Attorney Carol A. Brigham, also filed a motion for advice for communicating directly with the defendant, who had filed a self-represented appearance " 'in addition to' " his attorney's appearance. At a February 14, 2022 hearing on those motions, Brigham informed the court that the communication issue had been resolved, and she also addressed the division of the defendant's retirement funds. Brigham explained: "I believe [the defendant] has submitted the original paperwork. I believe [the plaintiff] has provided her Social Security number, and I believe both parties need to fund . . . the [QDRO] service, and [they] need to provide any other information that the company would need. So, I think at this point we just want to ensure that both parties fund this . . . immediately, actually. I think my client believes they both owe $975, and I'm sure the service will not undertake the preparation until the payment is made. So, I would suggest they both pay within a week."

In response, the defendant stated: "So, this was delayed because of the communication issues between me and . . . Brigham as soon as it was agreed to use

this . . . service. I was the one who filled in all the information that they needed, except I didn't remember [the plaintiff's] Social Security number, so they were requesting to get that Social Security number, but I'm . . . glad that she has provided [it] at this time. They haven't sent a bill yet. As soon as they send a bill, I will pay my part of it. There's one issue . . . I thought they were charging per company, but they [are] actually charging per retirement account, and my retirement is split into more than half a dozen different accounts, so I specified three accounts, but I think they are going to—I'm going to revise that. I'll send them an email later today. So there [are] only two accounts. . . . I don't have enough money in one account. I can't do one account, so I have to do two. But that will save both me and [the plaintiff] $325 each. So, I'm going to make that change to save a little bit of money for both of us.''

On March 14, 2022, the plaintiff filed a postjudgment motion requesting that the court clarify whether the $175,000 award "was to be adjusted for gains and losses until the time of transfer" and that the court "award the plaintiff statutory interest from December 3, 2018, to the present if the QDRO allocation is not adjusted for gains and losses . . . ." The defendant filed a response to that motion on June 7, 2022, stating that he had "done all the required paperwork and paid the fee. The transfer can proceed as soon as [the plaintiff] and her attorney give the green light. . . . My understanding is that statutory interest is a concept used for delinquent debts. I am not and have not been delinquent. The retirement transfer was put on hold during the appeal process, governed by judicial rules beyond my control. Subsequent delays were due to (i) . . . [the] unwillingness [of the plaintiff's counsel] to directly communicate with me as a [self-represented] party, increasing the time it took to agree on a company to execute the QDRO, and (ii) this subsequent court motion, which has stalled the transfer process. . . .

"Brigham said that there [is] a Connecticut statute in support of her claim for statutory interest. . . . If she had sent me a copy of such a statute, and it says what she claims, I would have paid the required amount upon reading it. Since she did not send me a copy, I do not know if it exists or if she was bluffing to intimidate me and/or impress the judge.

"[Brigham] is asking for statutory interest not only for the Appellate Court period, but also for the subsequent delays caused by her. During [that] delay . . . the stock market has gone down, and the unnecessary . . . delay in the retirement transfer has therefore caused a financial loss to me and my children. If there is to be an adjustment, the natural thing would be for me to be compensated for that unnecessary loss . . . ."

The court held an evidentiary hearing on the plain-

tiff's motion for clarification on June 8, 2022, and Attorney Kenneth Caisse appeared on behalf of the plaintiff. Both parties were placed under oath at the beginning of the hearing. Caisse explained that the transfer from the defendant's retirement accounts had not occurred because the company that the parties hired to process the QDROs "would not proceed until there was a resolution of this interest [issue] so that they could have a proper amount, or calculation, to be able to make the transfers. So, they're waiting on a resolution of this particular motion. I would report to the court that at this point what we're primarily requesting is the statutory interest, which is 10 percent, which the court has authority to do pursuant to [§] 37-3a . . . ." Shortly thereafter, the following exchange occurred between the court and the defendant:

"The Court: . . . [D]o you want to be heard before Attorney Caisse argues?

"[The Defendant]: Yes, please. First of all, I submitted a response to the motions. I don't know if Your Honor has read that.

"The Court: I did read that.

"[The Defendant]: Thank you. I also would like to, just for the record, since I'm now under oath, to just state that all those things are truthful, and that—so I want to do that under oath. So, I've been doing that here by doing that. I would also like to have a copy of the Connecticut statute. I know that Attorney Brigham mentioned that in March I think. And I don't know why I haven't received . . . a copy of [it]. I know you mentioned the number, but I didn't . . . have time to write down the number."

After the defendant submitted a copy of an email that he had sent to Caisse explaining why he was unable to prepare a financial affidavit, he explained that he would need more time to go through his retirement account records. At that point, the court asked Caisse: "[I]f I grant . . . [the plaintiff's] request for the statutory interest then that would obviate the need for [the defendant] to provide those documents. That would solve the problem, would it not?" Caisse responded affirmatively, and the court proceeded to hear argument on the plaintiff's request for statutory interest.

Caisse argued that "the court intended that [the plaintiff] be able . . . to do what she wants with [the retirement funds as] of December, 2018.

* * *

"If she had, she could have invested—maybe she gets . . . 15 percent during this period of time . . . . Or she could have used it for whatever other reason she had. . . . But she hasn't been able to do that." Caisse also provided the court and the defendant with copies of the cases he cited in support of an award of postjudg-

ment interest pursuant to § 37-3a.

After hearing from the parties as to other issues unrelated to the present appeal, the court noted that it would issue a ruling clarifying its decision and addressing the plaintiff's request for postjudgment interest. At that point, the defendant stated: "So, I have no opportunity to read the [cases] provided and the Connecticut statute, I guess?" The court responded, "I'm not ruling [now], so anything that you want to submit between now and the ruling is fine."[3]

On June 13, 2022, the defendant filed another response to the plaintiff's motion for clarification, in which he argued that "[t]he retirement transfer did not become payable until after the appeal was denied on November 30, 2021. I have submitted all the paperwork required for the transfer. Delays in 2022 are due to the plaintiff and her previous attorney, as explained in [his June 7, 2022 response to the plaintiff's motion for clarification]." After addressing the case law cited by Caisse at the June 8, 2022 hearing, the defendant noted that Caisse had "argued for statutory interest based on an increase in [the defendant's] retirement savings from 2018 to 2021. Much of this increase was due to contributions that I made to my retirement accounts after the divorce was finalized." The defendant did not submit any documents in support of his claims in that response.

On September 27, 2022, the court issued a memorandum of decision granting the plaintiff's motion for clarification and request for postjudgment interest. In that decision, the court explained that, "[a]lthough the adjustment based on gains and losses was stated to be permissive, the period contemplated by the court included only the time between the conclusion of the September, 2018 trial and the December, 2018 issuance of its final orders. The orders of the judgment were stayed because of the then pending appeal and the funds were not and have not been transferred now that . . . the court's judgment [has] been affirmed in its entirety. The plaintiff argues that application of § 37-3a (a) would be an appropriate means of addressing the protracted delay in transferring the funds. The defendant disagrees, [arguing] that the funds were not wrongfully withheld and that any gains or losses could be ascertained to arrive at a figure. It is undisputed that no funds have been transferred by QDRO.

\* \* \*

"The defendant . . . withheld the transfer of funds awarded to the plaintiff . . . on the basis of a good faith belief that he was legally entitled to retain the funds while filing various appeals from the judgment. The defendant's appeal of the judgment effectively served to stay the transfer of the funds and deprived the plaintiff of her use of the funds for forty-five months.

"Pursuant to § 37-3a, the court has the discretion to

fashion an equitable and appropriate remedy and may award postjudgment interest to the plaintiff. . . . In the present action, the remedy of postjudgment interest in accordance with § 37-3a would serve to compensate the plaintiff for the detention of $175,000, which was payable on December 3, 2018, the date that the court dissolved the marriage of the parties. Considering the protracted history of this case, it would not be an abuse of discretion for the court to compensate the plaintiff for the inequity of having been deprived of the funds during this extended period of time. . . .

"The court determines that it may award the plaintiff no more than 10 percent interest, annually, beginning from December 3, 2018, through the date that the court issues its decision on the plaintiff's motion for clarification and request for statutory interest.

* * *

"As of the issuance of these orders, the court finds that the defendant has wrongfully withheld the $175,000 due and payable by QDRO to the plaintiff for a period of forty-six months. Accordingly, the court will award [5 percent] statutory, annual interest to the plaintiff pursuant to § 37-3a (a). This will occasion an additional payment of $8750 for each of the three full years that the funds were not paid and an additional $6800 for the unpaid months of the fourth year. The total additional amount is $33,050. The accrual of interest will cease as of the issuance of this order. . . .

"The defendant is to transfer $175,000 to the plaintiff within fifteen (15) days of the issuance of this order and the additional $33,050 is to be transferred within thirty (30) days. If there is delay beyond that which is necessary to prepare the QDROs, interest will again begin to accrue on the 31st day beyond the issuance of these orders to terminate only upon the execution of the QDROs." (Citations omitted.) This appeal followed.[4]

On appeal, the defendant does not challenge the court's award of $26,250 in postjudgment interest for the three years during which his appeal from the dissolution judgment remained pending. Instead, he claims that the court improperly awarded the plaintiff interest for the period thereafter. Specifically, he claims that the court improperly awarded (1) $6800 in postjudgment interest for the ten month period from December, 2021, to September, 2022, and (2) 5 percent interest after October, 2022.[5]

We begin our analysis with the applicable standard of review and relevant legal principles regarding awards of interest pursuant to § 37-3a. "A decision to [award] postjudgment interest is primarily an equitable determination and a matter lying within the discretion of the trial court. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only

upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court properly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Customers Bank* v. *Tomonto Industries, LLC*, 156 Conn. App. 441, 452, 112 A.3d 853 (2015); see also *Tilsen* v. *Benson*, 347 Conn. 758, 796, 299 A.3d 1096 (2023) ("[a]n appellate court will not disturb a trial court's orders in domestic relations cases unless the court . . . could not reasonably conclude as it did, based on the facts presented" (internal quotation marks omitted)).

Pursuant to statute, "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." General Statutes § 37-3a (a). " 'Although § 37-3a does not use the word "wrongful" to describe a compensable detention of money under the statute, [our Supreme Court] has long employed that term to describe such a detention. . . . [The] earliest cases interpreting § 37-3a reveal that the term "wrongful" invariably was used interchangeably with "unlawful" to describe the narrow category of claims for which prejudgment interest was allowed under the statute, namely, claims to recover money that remained unpaid after it was due and payable. . . . Consistent with this precedent, [our Supreme Court] . . . clarified that, under § 37-3a, proof of wrongfulness is not required "above and beyond proof of the underlying legal claim." . . . In other words, the wrongful detention standard of § 37-3a is satisfied by proof of the underlying legal claim, a requirement that is met once the plaintiff obtains a judgment in his favor on that claim.' " *Paniccia* v. *Success Village Apartments, Inc.*, 215 Conn. App. 705, 731, 284 A.3d 341 (2022); see also *Marulli* v. *Wood Frame Construction Co., LLC*, 154 Conn. App. 196, 206, 107 A.3d 442 (2014), cert. denied, 315 Conn. 928, 109 A.3d 923 (2015).

"The trial court's discretion in awarding interest is quite broad, and the court may consider whatever factors may be relevant to its determination." (Internal quotation marks omitted.) *Salce* v. *Wolczek*, 314 Conn. 675, 696–97, 104 A.3d 694 (2014). "A court's discretion must be informed by the policies that the relevant statute is intended to advance. . . . [T]he policy behind [§ 37-3a] is to compensate the successful party for the loss of the use of the money that he or she is awarded from the time of the award until the award is paid in full." (Internal quotation marks omitted.) *Marulli* v. *Wood Frame Construction Co., LLC*, supra, 154 Conn. App. 207.

The defendant first claims that the court improperly awarded the plaintiff $6800 in postjudgment interest because "[i]t was the plaintiff and [her] attorneys who did not do what was necessary for her to receive those

funds." We are not persuaded.

As previously noted in this opinion, in his response to the plaintiff's motion for clarification and request for statutory interest, the defendant argued that the delays beginning in 2022 "were due to (i) . . . [the] unwillingness [of the plaintiff's counsel] to directly communicate with me as a [self-represented] party, increasing the time it took to agree on a company to execute the QDRO, and (ii) *this subsequent court motion, which has stalled the transfer process*. . . . If [the plaintiff's counsel] had sent me a copy of [§ 37-3a], and it says what she claims, *I would have paid the required amount upon reading it*. Since she did not send me a copy, I do not know if it exists or if she was bluffing to intimidate me . . . . [The plaintiff's counsel] is asking for statutory interest not only for the Appellate Court period, but also for the subsequent delays caused by her." (Emphasis added.)

On appeal, however, the defendant argues that, although "there was a disagreement about the plaintiff's request for 10 percent in statutory interest, there was no reason to hold up the transfer of the $175,000, about which there was no disagreement. At the hearing, the plaintiff's attorney stated that the QDRO company '*would not proceed until there was a resolution of this interest*,' but they would have moved ahead with the $175,000 transfer if both parties agreed and paid the fee." (Emphasis in original.)

Initially, we note that, although the defendant claims on appeal that there was "no reason to hold up the transfer of the $175,000," the plaintiff's motion for clarification indicated that the parties, in fact, disagreed as to whether that amount was subject to adjustment for gains or losses. More importantly, during the June 8, 2022 evidentiary hearing on the plaintiff's motion for clarification, when the defendant had an opportunity to address the trial court immediately after the plaintiff's counsel stated that the QDRO company "would not proceed" with the transfer, he neither claimed that the plaintiff had prevented the execution of the QDROs nor sought to present any evidence contradicting the statement of the plaintiff's counsel. In fact, despite being provided with additional time after that hearing to respond to the plaintiff's request for postjudgment interest, the defendant again neither addressed counsel's explanation as to why the transfer had not occurred nor sought to present evidence to support his claim that the plaintiff was responsible for the delay after November 30, 2021. After forgoing those opportunities to present evidence in support of his claim, the defendant now attempts to do so on appeal.

In the appendix to his appellant's brief, the defendant includes documents that were not presented to the trial court. Specifically, he includes copies of emails exchanged among the parties, the plaintiff's counsel,

and the company that the parties hired to execute the QDROs.[6] The defendant concedes that he is relying on evidence that was not presented at the June 8, 2022 hearing "with respect to evidence that the plaintiff and [her] attorneys are responsible for the delay after December, 2021," but contends that, "[i]f an attorney is dishonest, courts should allow subsequent evidence about that." In other words, the defendant asks this court to conclude, on the basis of evidence not presented to the trial court, that the plaintiff "refused to accept the funds" and, therefore, that the court abused its broad discretion in awarding postjudgment interest pursuant to § 37-3a. We decline to do so.

This court cannot find facts and, therefore, "we cannot consider evidence not available to the trial court to find adjudicative facts for the first time on appeal." *State* v. *Edwards*, 314 Conn. 465, 478, 102 A.3d 52 (2014); see also *Parisi* v. *Parisi*, 315 Conn. 370, 385, 107 A.3d 920 (2015) ("[a]n appellate court cannot find facts or draw conclusions from primary facts found, but may only *review* such findings to see whether they might be legally, logically and reasonably found" (emphasis in original; internal quotation marks omitted)). Accordingly, because the documents on which the defendant relies were not before the trial court, we will not consider them on appeal. See, e.g., *Rainbow Housing Corp.* v. *Cromwell*, 340 Conn. 501, 523 n.12, 264 A.3d 532 (2021) ("[t]his evidence was not presented to the trial court and cannot be considered for the first time on appeal"); *Cunningham* v. *Planning & Zoning Commission*, 90 Conn. App. 273, 278–79, 876 A.2d 1257 (granting motion to strike references in party's brief to conservation plan "[b]ecause the conservation plan was not in evidence before the trial court when it rendered its judgment"), cert. denied, 276 Conn. 915, 888 A.2d 83 (2005); *DiBello* v. *Barnes Page Wire Products, Inc.*, 67 Conn. App. 361, 374–75, 786 A.2d 1234 (2001) ("[b]ecause the defendant's claim is predicated entirely on a document extraneous to the record, we cannot consider it"), cert. granted, 260 Conn. 915, 796 A.2d 560 (2002) (appeal withdrawn June 26, 2002).

Having reviewed the evidence in the record, we conclude that the court correctly applied the law and reasonably concluded as it did. The court properly found that the defendant wrongfully withheld the $175,000 beginning on December 3, 2018, and that the wrongful detention continued until the court issued its decision in September, 2022. The court reasoned that, "[c]onsidering the protracted history of this case, it would not be an abuse of discretion for the court to compensate the plaintiff for the inequity of having been deprived of the funds during this extended period of time." Such reasoning is consistent with the statutory purpose of postjudgment interest, which "is not to punish defendants but, rather, to compensate plaintiffs for the loss of the use of their money, after the fact finder has

determined that the money is due and owing, during the pendency of any appeals." *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38, 60 n.18, 74 A.3d 1212 (2013).

To be sure, the court could have declined to award the plaintiff interest if it found that the plaintiff refused to accept the $175,000 at some earlier date. See, e.g., *Gebbie* v. *Cadle Co.*, 49 Conn. App. 265, 277–78, 714 A.2d 678 (1998) (holding that trial court properly declined to award defendant interest on payments due from earlier date given "the pivotal fact that the defendant refused to accept [those] payments"). The defendant, however, provided no basis for the court to make such a finding and, instead, argued that the plaintiff and her attorneys caused the delay by filing the postjudgment motion for clarification and request for statutory interest. Given the defendant's arguments before the trial court, and considering the evidence in the record, we cannot conclude that the court abused its discretion in finding that the wrongful detention continued until the court issued its decision on the plaintiff's postjudgment motion. See, e.g., *Bruno* v. *Bruno*, 177 Conn. App. 599, 613, 176 A.3d 104 (2017) ("[a]lthough an earlier date may have been within the court's discretion, we cannot say that the court abused its discretion").

Finally, the defendant claims that the court improperly ordered that, "[i]f there is delay beyond that which is necessary to prepare the QDROs, interest will again begin to accrue on the 31st day beyond the issuance of these orders to terminate only upon the execution of the QDROs." In his principal brief on appeal, the defendant outlines the events that transpired in the months after the court's September 27, 2022 decision and argues that he is not responsible for the ensuing delay in executing the QDROs. According to the defendant, the court awarded the "plaintiff statutory interest into the future without knowing whether the plaintiff or the defendant might be responsible for future delays." We disagree.

The court did not award the plaintiff interest for any time after September, 2022. Instead, the court ordered that "[t]he accrual of interest will cease as of the issuance of this order" and that 5 percent interest would accrue again *if* there was any unnecessary delay in the execution of the QDROs. There is no question that the court has the authority to issue such an order to compensate the plaintiff for any unnecessary delay in satisfying the judgment. Nevertheless, as the plaintiff's counsel conceded during oral argument before this court, that order is not self-executing, and the trial court would need to make a finding that the defendant was responsible for the unnecessary delay in executing the QDROs. At this point, however, the court has not been asked to make that determination, and the defendant has not been ordered to pay interest for any period after the

court's September, 2022 decision.[7] Accordingly, we reject the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Specifically, the defendant claimed "that the trial court (1) erred by failing to identify the presumptive child support obligation under the child support guidelines . . . before entering a support order based on a deviation, (2) erred in calculating the parties' incomes, (3) erred in awarding the plaintiff a lump sum property settlement, (4) abused its discretion in awarding appellate attorney's fees to the plaintiff, and (5) abused its discretion in entering its custodial orders." *Anketell* v. *Kulldorff*, 207 Conn. App. 807, 810, 263 A.3d 972, cert. denied, 340 Conn. 905, 263 A.3d 821 (2021).

[2] In October, 2021, the trial court granted the plaintiff's postjudgment motion for attorney's fees. Although the defendant appealed from that judgment, he withdrew his appeal on December 13, 2021.

[3] Although Caisse urged the court "not to accept any further writings from [the defendant] regarding [the postjudgment interest] issue," the court did not alter its instruction to the defendant.

[4] While this appeal was pending, the parties executed two QDROs assigning the plaintiff $208,050 from two of the defendant's retirement accounts: $52,600 from one account and $155,450 from a second account. The first was signed by the parties in January, 2023, and the second was signed by the defendant in May, 2023, and by the plaintiff in June, 2023. After a hearing on August 31, 2023, the court, *Chadwick, J.*, signed both QDROs on September 1, 2023.

[5] The defendant also asserts that (1) Caisse "lied in court" regarding the growth rate of the defendant's retirement accounts in arguing for 10 percent statutory interest and (2) "there has been a pattern of false accusations and perjury . . . ." (Citation omitted.) Neither claim warrants much discussion.

First, any claim predicated on the actual growth rate of the retirement accounts necessarily fails given that the court awarded the plaintiff interest pursuant to § 37-3a. Indeed, the court expressly stated that granting the plaintiff's request for statutory interest "would obviate the need for [the defendant] to provide" records of his retirement accounts. Second, the alleged "pattern of false accusations and perjury" is unrelated to the issue of postjudgment interest. The defendant identifies three incidents that occurred more than three years before the June 8, 2022 hearing on the plaintiff's motion for clarification. Each incident involved child support payments, which are not at issue in this appeal. Insofar as the defendant suggests that those incidents provide a basis for reversing the court's award of postjudgment interest, we are not persuaded. Accordingly, we limit our discussion to the defendant's primary claims challenging the only judgment from which the defendant has appealed.

[6] Some of the emails were exchanged before the June 8, 2022 hearing, but many of them were not exchanged until after the court issued its memorandum of decision in September, 2022.

[7] Of course, if the court orders the defendant to pay interest for that period, the defendant may appeal from the judgment awarding the plaintiff additional interest.